THE BUFFALO EAST SIDE RAILROAD COMPANY, Appellant, v. THE BUFFALO STREET RAILROAD COMPANY, Respondent.

The authority of the legislature in the exercise of its police powers cannot be limited or controlled by the action of a previous legislature, or by the provisions of contracts between individuals or corporations.

The parties hereto, two street railroad corporations in the city of B., entered into a contract providing, among other things, for the making by each of connections with the roads of the other "so long as it receives for the transportation of passengers the fare allowed on the 3d of May, 1872, and no longer," and each agreed that it would charge the same rate that it was "permitted to charge by the statutes in force regulating the same" on that day, and would make no change in rates without the consent of the other party. After the making of the contract it was declared by statute (Chap. 600, Laws of 1875), to be unlawful for any street railroad company in B. to charge more than five cents for each passenger, a sum less than that authorized by the statutes in force May 3, 1872. Defendant thereupon reduced its rates of fare to five cents. In an action to recover a penalty fixed by the contract for a breach of the provision as to rates of fare, *held*, that said provision contemplated a change of rates made by the voluntary action of the parties alone, not one made by paramount authority; also that by the terms of the contract it was to terminate in case a condition of affairs should arise under which the parties would not be permitted to charge the rates of fare specified; and so, that it terminated on the passage of the said act.

Also, *held*, that said act was not obnoxious to the constitutional prohibition against passing a law impairing the obligation of contracts.

(Argued June 15, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made

January 20, 1876, which sustained a demurrer to plaintiff's complaint.

The nature of the action and the facts alleged in the complaint are substantially set forth in the opinion.

*James C. Carter* and *E. C. Sprague* for appellant. The legislature has power to act upon the subject of railway fares; nothing but a binding contract can preclude such action. (*Chicago, B. & Q. R. R. Co.* v. *Iowa,* 94 U. S. 155.) A contract, whether between natural persons or corporate bodies, valid at the time it was made, continues valid and binding, notwithstanding any state legislation, until its full performance. (*Stone* v. *Mississippi,* 101 U. S. 814.) The death of a corporate body has no more effect upon the obligation of its contracts than the death of a natural person has upon that of his contracts. (*Mumma* v. *Potomac Co.,* 8 Pet. 281.) When a corporation is created it has the same rights, and the same duties, within the scope marked out for its action, that a natural person has. Its property is secured to it by the same constitutional guarantees, and its contracts are just as obligatory and inviolable as in the case of natural persons. (1 Morawetz on Corporations, §§ 1–8; *C. R. R. Co.* v. *Iowa,* 94 U. S. 155, 161; *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518.) There is no difference, so far as the principle in question is concerned, between contracts between individuals, and those to which the state is a party. (3 Hamilton's Works [Lodge's ed.], 29; Angell & Ames on Corp. § 767; U. S. Con. art. 1, § 10; *Seibert* v. *Lewis,* 122 U. S. 284.) The powers of a corporation, in the proper sense of that word, are held under the control of the legislature, but its acts, valid when done, are beyond its reach. It may indicate what contracts a corporate body may in the future make, but it cannot absolve them from the obligation to perform contracts already made. (*Sinking Fund Cases,* 99 U. S. 700.) The reservation of legislative authority over corporate bodies is limited to the contract between the state and the corporation, and does not touch any

contract made between the corporate body and third persons. (*Tomlinson* v. *Jessup*, 15 Wall. 454; *Spring Valley Water-works* v. *Schottler*, 110 U. S. 387.) A legislature cannot by any action under the reserved power take away any property or right, or affect any obligation, acquired or assumed by a legitimate exercise of the powers granted to a corporate body. (*Sage* v. *Villard*, 15 B. Mon. 340; *Comm.* v. *Essex Co.*, 13 Gray, 239; *Old Town R. R. Co.* v. *Veazie*, 39 Me. 571; *Blake* v. *P. & C. R. R. Co..* 39 N. H. 435; *Holyoke Co.* v. *Lyman*, 15 Wall. 500; *New Jersey* v. *Yard*, 95 U. S. 104.) The obligation of a contract begins at its date, depends on the laws in existence when it was made, and continues until the debt is paid, or the acts agreed to be done performed. (*Blair* v. *Williams*, 4 Littell, 34; *Robinson* v. *Duncan*, 3 Mart. 531; *Western Soc. Lan. Fund* v. *Philadelphia*, 31 Pa. St. 175; *Wood* v. *Wood*, 14 Rich. 148; *Smith* v. *Cleveland*, 17 Wis. 556; *Bartey* v. *Gentry*, 1 Mo. 164; *Forsyth* v. *Marbury*, 1 R. M. Charl. 234; *Edwards* v. *Kearney*. 96 U. S. 595; *Fiske* v. *Police Jury of Jefferson*, 6 U. S. Sup. Ct. Rep. 329 n.) The companies are private corporations, although existing for public uses, and contracts made by them with their creditors, with each other, or by the state with them, are as inviolable as if they were private individuals. (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 526, 566; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420; *Whiting* v. *Sheyboygan, etc., R. R. Co.*, 25 Wis. 137; *Attorney-General* v. *C. & N. W. R. Co.*, 35 id. 425; *People* v. *Batchellor*, 53 N. Y. 128.) The act of May 3, 1872, was, in legal effect, an express and inviolable contract between the state of New York and the companies, by which, for a valuable consideration, the state agreed with them that, during their corporate existence, they should have the right to charge the rates of fares which they were permitted to charge on that day, unless changed by their mutual consent, and the act of June 18, 1875, is unconstitutional, because it impaired that contract. (*Trustees of Dartmouth College* v. *Woodworth*, 4 Wheat. 518, 537, 538;

*Jefferson Branch Bank* v. *Skelly*, 1 Black, 436 ; *Comm.* v. *N. B. Bridge Co.*, 2 Gray, 339 ; *Comm.* v. *Essex Co.*, 13 id. 239; *Humphreys* v. *Pegnes*, 16 Wall. 244 ; *Binghamton Bridge Case*, 3 id. 51 ; *W. R. R. Co.* v. *Reed*, 13 id. 264 ; *Fletcher* v. *Peck*, 6 Cranch, 87 ; *Chenango Bridge Co.* v. *Binghamton Bridge Co.*, 30 How. Pr. 346 ; *Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 75.) The validity of the act of June 18, 1875, is not preserved by the reservations of legislative control over corporations contained in the state Constitution and the Revised Statutes, and those reservations afford no defense to the defendant in this action. (2 R. S. [5th ed.] part 1, tit. 3, chap. 18, § 8, p. 597 ; *White* v. *S. & U. R. R. Co.*, 31 Barb. 561 ; *Hyatt* v. *McMahon*, 25 id. 468 ; *B. & N. Y. C. R. R. Co.* v. *Dudley*, 14 N. Y. 348 ; *Poughkeepsie, etc., Plank-road Co.* v. *Griffin*, 24 id. 150 ; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166 ; *Miller* v. *N. Y. & E. R. R. Co.*, 21 Barb. 513 ; *Atty-Genl.* v. *C. & N. W. R. R. Co.*, 35 Wis. 579 ; *Miller* v. *State*, 15 Wall. 478 ; *Dodge* v. *Woolsey*, 18 How. 331 ; *Holyoke Co.* v. *Lyman*, 15 Wall. 500 ; *Penn. College Cases*, 13 id. 190, 205 ; *Conant* v. *Van Schaick*, 24 Barb. 87 ; *Story* v. *Furman*, 25 N. Y. 214 ; *People* v. *Comm., etc.*, 47 id. 501 ; *Home of Friendless* v. *Rouse*, 8 Wall. 430 ; *Benson* v. *Mayor, etc.*, 10 Barb. 223 ; Cooley on Const. Lim. [3d ed.] 126 ; *Bloomer* v. *Stolley*, 5 McLean, 161 ; *Comm.* v. *Essex Co*, 13 Gray, 239 ; *Dufee* v. *O. C. R. R. Co.*, 3 Allen, 230 ; *Allen* v. *McKeen*, 1 Summ. 299 ; 6 Mich. 193 ; *Erwin's Appeal*, 16 Penn. St. 256 ; *State* v. *Noyes*, 47 Me. 189 ; *Ins. Co.* v. *Morse*, 20 Wall. 445.) The term " due process of law " does not include a Constitution — a statute of state. ( *Wynehamer* v. *People*, 13 N. Y. 392 ; 2 Kent's Com. 13 ; *Taylor* v. *Porter*, 4 Hill, 145 ; *Mumma* v. *Potomac Co.*, 8 Pet. 281 ; *Bacon* v. *Robertson*, 18 How. 480, 486 ; *People* v. *A., etc., R. R. Co.*, 24 N. Y. 26.) To destroy the ability of a party to perform his contract, is to impair its obligation within the meaning of the Constitution. (*Pumpelly* v. *Green Bay Co.*, 13 Wall. 166 ; *Parker* v. *Met. R. R. Co.*, 109 Mass. 506 ; *Thornton* v. *Mar. Freight R. R. Co.*, 123 id. 32, 34 ; *Coast Line R. R. Co.* v. *City of Savan-*

*nah*, 32 Fed. Rep. 646; *Morris* v. *Essex, etc., R. R. Co.*, 7 At. Rep. 826; *St. Gan. W. W. Co.* v. *N. O. W. W. Co.*, 120 U. S. 64; *C. W. W. Co.* v. *B. H. Co.*, 10 At. Rep. 170; *Shields* v. *Ohio*, 96 U. S. 524; *O. T. R. R. Co.* v. *Veazie*, 39 Me. 570, 580, 581; *Sinking Fund Cases*, 99 U. S. 700, 721, 740–742, 748, 749, 757, 758; *N. O. Gas, Water and Bridge Cases*, 115 id. 650, 660, 672, 674; *Louisville Gas Co.* v. *Cit. Gas Co.*, Id. 683; *Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y. 234; Morawetz on Pri. Corp. §§ 473, 474, 478.) The reservation of legislative control over the corporate power of the defendant acts only upon the relations between the state and corporation, and not upon what is done between the corporation and those with whom it deals. (*N. O. Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *R. R. Comrs. Cases*, 116 id. 307, 329; *Tomlinson* v. *Jessup*, 15 Wall. 459; *O. T. R. R. Co.* v. *Veazie*, 39 Me. 571, 580, 581; Morawetz on Corp. § 1102; *Sinking Fund Cases*, 99 U. S. 721, 748, 749, 757; *Miller* v. *State*, 15 Wall. 499; *Chicago* v. *Sheldon*, 9 id. 50, 55; *Coast Line R. R. Co.* v. *Mayor, etc.*, 30 Fed. Rep. 646, 650, 652.)

*Sherman S. Rogers* for respondent. The act of June, 1875, reducing the rates upon the roads of the respective parties was constitutional and valid. (Constitution, art. 8, § 1; 1 R. L. 600, § 8.) It is too late to question the power of the legislature to diminish fares to be charged by a railroad company, incorporated under the laws of this state. (*In re O. Lee & Co.'s Bk.*, 21 N. Y. 9; *In re Reciprocity Bk.*, 22 id. 11; *People ex rel. Kimball* v. *B. & A. R. R. Co.*, 70 id. 569; *Sheilds* v. *Ohio*, 95 U. S. 319; *Greenwood* v. *Freight Co.*, 105 id. 13, 21; *Mumma* v. *Potomac Co.*, 8 Peters, 281.) When the plaintiff took defendant's promise not to change its fares, it did so knowing that the franchise to change any fare, nay, even its franchise to exist, was within the control of the legislature, and that no one legislature could take away this power, directly or indirectly, from its successor and impliedly consented that this should be so, and the subsequent legislative action, therefore, in no manner impaired the obligation of the

B. E. S. R. R. Co. *v.* B. S. R. R. Co.

contract which had been made with it. (*People* v. *Globe Mut. L. Ins. Co.*, 91 N. Y. 174, 179; *Peck* v. *C. R. R. Co.*, 94 U. S. 164.)

RUGER, Ch. J. The plaintiff and defendant are respectively incorporated street railroad companies, located in the city of Buffalo, and the action was brought upon a contract to recover a sum stipulated to be paid, as liquidated damages, upon a breach thereof by either party, that should reduce its rates of fare below the prices authorized to be charged under the statutes in force on May 3, 1872, each party thereby agreeing to make no change therein, without the consent of the other. This contract was claimed to have been made by authority of chapter 474 of the Laws of 1872.

Subsequent to this contract the legislature, by chapter 600 of the Laws of 1875, enacted, in substance, that it should be unlawful for any street railroad company in Buffalo to charge more than five cents for each passenger carried on their respective roads, without regard to the distance traveled. This price was considerably less than the amount authorized to be charged by the former statute.

Immediately thereafter the defendant reduced its rates of fare to the price authorized by the act of 1875, and this reduction constitutes the breach of the contract, relied upon for a recovery.

No question is made but that if the act of 1875 was a valid enactment, the defendant was required to conform to it, and would have a good defense to the action. It is, however, claimed by the plaintiff that the act was unconstitutional and void, inasmuch as it impaired the obligation of contracts. The only contract claimed to have been impaired is the one sued upon.

Among the defenses made to the action, is the claim that the agreement had terminated before the alleged breach by virtue of its own limitation, and it is also urged that a reasonable construction of the language of the agreement shows that

its obligations were not intended to survive, any statutory reduction of the rates of fare chargeable upon such railroads.

There is no express provision in the contract providing for the period of its duration, but there are several, which furnish strong grounds for the inference that the parties did not intend that it should continue, after an unfavorable change in the rates of fare. Among these provisions it is only necessary to refer to one, providing that, " the said party of the first part so long as it receives for the transportation of passengers the fare allowed by law on the 3d day of May, 1872, *and no longer*," will make connections with roads to be built by the party of the second part, and run a sufficient number of cars to accommodate all passengers applying for transportation, etc. ; and another contained in the fifth paragragh which provides that the party of the first part agrees that it will, during the continuance of the contract, charge the same rates for the transportation of passengers over its railroads, or any part thereof, that it is "*permitted to charge* by the statutes in force regulating the same on the 3d day of May, 1872, and that it will not make any change in such rates without the consent of the party of the second part."

Similar provisions were contained in the contract relating to the obligations of the party of the second part, and contemplating the termination of the contract upon the same contingency.

It is quite clear that the parties had in view a condition of affairs under which they would not be *permitted* to charge and receive the rates of fare authorized by former acts, and in that event expressly provided for the termination of the contract.

But the plaintiff contends that the rates authorized on May 3, 1872, still continue, so far as these two companies are concerned, by force of the obligations of their contract, and the constitutional inhibition upon the state from passing any law impairing its effect.

We are not impressed with the soundness of this contention. It was competent for the parties to agree upon any

period as the duration of their contract, and they might, if they chose to do so, provide that it should cease upon the passage of even an unconstitutional law.

It is difficult to explain what is meant by the expression that the contract should continue so long as the companies received and were *permitted* to charge the rates authorized on May 3, 1872, and no longer, if there was no constitutional power to effect such change. Settled rules of construction require us to give some meaning and effect to all of the language employed in the contract, provided it can be done without doing violence to the plain object and intent of the parties in making their agreement.

It is quite clear that the parties assumed the existence of the power of the legislature to change the rates, and contracted with reference to such a contingency. A fair and reasonable construction of the contract would seem to be that the parties intended any change to be effected by the voluntary action of the parties, and not one made in obedience to paramount authority. It would be unreasonable to say that either party intended to run the hazard and danger of disobedience to a statute of the state, and there is nothing, we think, in the contract which required it to do so.

Every exercise of legislative power is presumed to be constitutional, and it cannot, without the clearest language indicating such an intention, be supposed that parties anticipated the enactment of an unconstitutional law, or contracted upon such an assumption.

We are, therefore, of the opinion that the contract, so far as this provision was concerned, had terminated by force of its own limitation when the act of 1875 was enacted. Construed in this way, the legislation of 1873, incidentally referring to this contract and providing that its validity should not be affected thereby, is intelligible, and perhaps sustainable, but upon any other theory it is difficult to see its object or design. We cannot ascribe to the legislature an intention by that act, to hamper and restrain its successors in the exercise of legitimate constitutional power over the subject of railroad fares

(*Railroad Commission Case*, 116 U. S. 307), and if it was an effort to pass upon the validity of the contract, that subject was a judicial one and beyond the province of legislative authority to act upon.

But we are further of the opinion that the act of 1875 was a valid exercise of legislative power, and did not impair the obligations of any contract, within the meaning of the constitutional provision.

The inability of one legislature to limit or control the legislative action of its successors. is a familiar principle which needs no citation to support it. (*Pres. Church* v. *City of New York*, 5 Cow. 538.)

The same authority which confers upon one body the power of legislation authorizes its successors, in the exercise of their duty, to change, alter and annul existing laws when, in their judgment, the public interest requires it. In the performance of their duty of legislating for the public welfare, each successive body must, from necessity, be left untrammeled except by the restraints of the fundamental law, and when called upon to act upon subjects which concern the health, morals or interests of the people, as affected by a public use of property for which compensation is exacted by its owners, they are unlimited by constitutional restraint. It is unnecessary to discuss this proposition with much fullness as it was conceded by the appellant upon the argument, and is repeated in its printed brief, that the authority of the legislature in the exercise of its police powers could not be limited or restricted by the provisions of contracts between individuals or corporations. *Pacta privata publico juri derogare non possunt.*

This proposition is also abundantly established by authority. (*Pres. Church* v. *City of New York, supra ; Coats* v. *Mayor, etc.,* 7 Cow. 5˅5 ; *Vanderbilt* v. *Adams,* Id. 349 ; *Mayor, etc.* v. *Second Ave. R. R. Co.,* 32 N. Y. 261 ; *People* v. *B. & A. R. R. Co.,* 70 id. 569 ; *Stone* v. *Farmers' L. & T. Co.,* 116 U. S. 307; *Barbier* v. *Connolly,* 113 id. 27.)

It was said in *People* v. *Boston and Albany Railroad Company* (*supra*), that "railroad corporations hold their

property and exercise their functions for the public benefit, and they are therefore subject to legislative control. The legislature which has created them may regulate the mode in which they shall transact their business, the price which they shall charge for the transportation of freight and passengers, etc. * * * It may make all such regulations as are appropriate to protect the lives of persons carried upon railroads or passing upon highways crossed by railroads. All this is within the domain of legislative power, although the power to alter and amend the charters of such corporations has not been reserved. * * * Such legislation violates no contract, takes away no property, and interferes with no vested right."

In *Munn* v. *Illinois* (94 U. S. 124), Chief Justice WAITE, in speaking of the implied powers which social organization confers upon its government over the conduct and property of members, says that "it does authorize the establishment of laws requiring each citizen to so conduct himself and so use his own property as not necessarily to injure another. This is the very essence of government, and has found expression in the maxim *sic utero tuo ut alienum non lædas*. From this source came the police powers, which, as was said by Mr. Chief Justice TANEY in the *License Case* (5 How. 583), 'are nothing more or less than the powers of government inherent in every sovereignty, * * * that is to say * * * the power to govern men and things.' Under these powers the government regulates the conduct of its citizens one towards another, and the manner in which each shall use his own property, when such regulation becomes necessary for the public good. In their exercise it has been customary in England from time immemorial, and in this country from its first colonization, to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, etc., and in so doing to fix a maximum of charge to be made for services rendered, accommodations furnished, and articles sold."

Judge BRADLEY, in the *Sinking Fund Cases* (99 U. S. 747), referring to the Munn case, says: "The inquiry there was as

to the extent of the police power in cases where the public interest is affected; and we held that when an employment or business becomes a matter of such public interest and importance as to create a common charge or burden upon the citizen; in other words, when it becomes a practical monopoly, to which the citizen is compelled to resort, and by means of which a tribute can be exacted from the community, it is subject to regulation by the legislative power."

We think it unnecessary to discuss the question as to how far the legislature were authorized to go in regulating the affairs of corporations under the power of amendment and repeal imposed by the Revised and other statutes. (R. S. [7th ed.] § 8, tit. 3, chap. 18, part 1, p. 1531.)

It seems to be conceded by all of the authorities that such reservations confer upon them power to regulate, to a certain extent, the general management and control of the internal affairs of such corporations, but the grounds already referred to are sufficient to dispose of the case without considering questions not essential to that end.

We think the authorities cited are decisive of the question, and lead to an affirmance of the judgment.

The judgment of the court below should, therefore, be affirmed.

All concur, EARL and GRAY, JJ., in the result.

Judgment affirmed.