HILL et al. v. PHILO.

(Supreme Court, Appellate Division, Third Department.   November 10, 1915.)

1. CONTRACTS ⬳152—CONSTRUCTION.
   In construing a contract to determine its effect, it is not enough to give a single important word its technical meaning; but such word must be read with its context and the other provisions of the contract, and in view of the situation of the parties, to determine the intent it was used to express.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 284, 521; Dec. Dig. ⬳152.]

2. BROKERS ⬳7—ADVERTISING CONTRACT—CONSTRUCTION—"PRODUCE."
   Under a contract by which defendant magazine proprietor appointed plaintiff brokers as his representatives to secure advertising contracts, and in which it was provided that there should be a renewal of the employment for another year if the brokers should "produce" a total advertising income of a specified sum, and that the proprietors should turn over to the brokers all contracts for advertising now appearing, the existing contracts so turned over were to be included in computing the total advertising contracts obtained.
   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 5–8; Dec. Dig. ⬳7.
   For other definitions, see Words and Phrases, First and Second Series, Produce.]

Appeal from Trial Term, Chemung County.

Action by Albert P. Hill and George W. Tryon against Ernest R. Philo. Judgment for plaintiffs, and from it, and an order denying his motion for new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Harry H. Hays, of Elmira, for appellant.
Stanchfield, Lovell, Falck & Sayles, of Elmira, for respondents.

SMITH, P. J. The defendant was the publisher of the Poultry Review, a monthly magazine. The plaintiffs were engaged as advertising brokers. Upon June 2, 1911, the defendant, as party of the first part, entered into an agreement with plaintiffs, as parties of the second part, whereby the party of the first part agreed to make the parties of the second part the advertising representatives of the publication for one year, commencing with the issue 1911. The agreement then provides:

"It is also further understood that, if the parties of the second part produce a total advertising income of $16,000 during this year, this contract is to remain in force for the following 12 months; and if the second year of this agreement the parties of the second part produce $20,000 advertising income to the publication, the contract is to remain in force for the succeeding 12 months.

"Party of the first part agrees to turn over to the parties of the second part all contracts for advertising now appearing, and all schedules to appear in the Poultry Review, and to allow parties of the second part 30 per cent. of the gross revenue received for advertising during the term of this agreement."

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There are other provisions in the contract which are irrelevant to the question here raised.

At the end of the first year the defendant terminated the agreement upon the ground that the plaintiffs had not met the conditions required, and this action is brought for damages for such termination claimed on the part of the plaintiffs to have been unauthorized.

The "advertising contracts" turned over to the plaintiffs under the provision of this agreement amounted to about $8,000. If those contracts are to be included in the $16,000 which was to be produced the first year, in order to entitle the plaintiffs to a renewal of the agreement, then the plaintiffs have performed the condition entitling them to such renewal; otherwise, not. The trial court left to the jury to say what was meant in the requirement of the agreement that the plaintiffs were to "produce a total advertising income of $16,000 during this year." The jury has found that the intention of the parties was to include the advertising contracts turned over to the plaintiffs under the terms of the agreement here in suit, and that the plaintiffs are entitled to recover damages for the defendant's breach.

[1, 2] If there be a doubt as to what was the intention of the parties, it would probably raise a question of fact for the jury to determine. If, however, the jury had determined otherwise than that such advertising contracts should be included, it would seem to me that their verdict would be against the weight of evidence. It is not enough to give the technical interpretation to the word "produce" in order to determine the effect of this agreement. That word must be read with its environment and the other conditions of the contract, and the situation of the parties generally in order to determine what was intended to be stipulated. This defendant was publishing this paper. These advertising contracts already existed. Why should they be turned over to the plaintiffs, and the plaintiffs be given a percentage thereupon, unless they were to be estimated as a part of the $16,000 producing contracts which was to determine the right of the plaintiffs to a second year agreement? If that were not the intention, the defendant naturally would keep those contracts and insert them in his paper, and the fact that by the stipulation they were "turned over" to the plaintiffs is to my mind a controlling fact in determining the intention of the parties, that the income therefrom was to be a part of the $16,000 stipulated to be produced during the first year of the agreement. It will be remembered that this was the first year of this advertising agreement. It was made not long before the year was to start. It is not natural to expect large results during the first year of such an agreement. During the second year plaintiffs were to produce $20,000 as income from advertising contracts, a natural increase from $16,000 over the first year's production. It will not be claimed that this $20,000 was to be in addition to income from contracts which existed the first year, even though those contracts were part of those "turned over" by the defendant to the plaintiffs. It seems clear to me that these advertising contracts were turned over to the plaintiffs so that they might be "produced" by them as part of the result of the first year's performance of the agreement.

Whether or not this could be held as a matter of law, the jury has reached this conclusion, and I recommend an affirmance of the judgment entered upon their verdict. All concur.