CHARLES F. FLEISCHMAN, Respondent, *v.* CORNELIUS
FURGUESON, as Executor of MARION F. FLEISCHMAN,
Deceased, Appellant.

Husband and wife — separation agreement — specific per-
formance — construction of agreement, upon voluntary sepa-
ration of husband and wife, to effect that each, upon the death
of the other, should receive such interest in estate as provided
by intestate law of state in which decedent resided.

The defendant's testatrix and her husband, the plaintiff, entered
into a separation agreement containing, among others, the following
provision:

"7. In the event of the death of the party of the first part the
weekly payment of eight dollars shall cease and determine and the
party of the second part shall receive such interest in the estate of the
party of the first part as provided by the Intestate Laws of the Com-
monwealth of Pennsylvania as though there had not been an agreement
and in the event of the death of the party of the second part, said pay-
ment shall cease and the party of the first part shall have such interest
in the Estate of the party of the second part as provided for in Intestacy
under the Laws of the State of New York as if no agreement had existed
and the parties hereto lived together, except the same be absolved by
proceedings in divorce." The wife died without descendants, leaving
a last will and testament, whereby she bequeathed the bulk of her
personal estate to other persons than her husband. The husband
commenced this action against the executor to compel specific per-
formance of the above contract upon the theory that his wife had
agreed to die intestate, and that by the laws of the state of New York
he was entitled in the absence of a will to all of her personal property.
*Held*, that the contracting parties intended that their separation
agreement should not affect their rights under the intestacy laws of
either state in case one should die without leaving a will, but that they
did not contract to die intestate.

*Fleischman* v. *Furgueson*, 174 App. Div. 310, reversed.

(Argued March 21, 1918; decided April 2, 1918.)

APPEAL from a judgment of the Appellate Division
of the Supreme Court in the second judicial department,

entered August 2, 1916, *unanimously* affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term in an action to compel specific performance of a contract made between husband and wife.

The facts, so far as material, are stated in the opinion.

*Andrew F. Van Thun, Jr.,* for appellant.

*Thomas A. McKennell* and *Alfred H. Appell* for respondent. The construction placed upon the agreement by the courts below was correct. (*Hoffman* v. *Æ. F. Ins. Co.,* 32 N. Y. 405; *White* v. *Hoyt,* 73 N. Y. 505; *Gillette* v. *Bank of America,* 160 N. Y. 549; *Hamer* v. *Sidway,* 124 N. Y. 538; *Callanan* v. *K., etc., R. R. Co.,* 131 App. Div. 306; *French* v. *Syracuse,* 18 Misc. Rep. 278; *Albright* v. *Voorhies,* 36 Hun, 437; *Buck* v. *Burk,* 18 N. Y. 337; *Jones* v. *Kent,* 80 N. Y. 585; *Power* v. *Clark,* 127 N. Y. 417.)

CRANE, J. The trial court was of the opinion that by the agreement made between the plaintiff and his wife, Marion F. Fleischman, both parties had contracted not to make wills but to die intestate for the benefit of each other. This conclusion having been unanimously affirmed by the Appellate Division, we are bound by the facts as set forth in the findings, but as these contain the contract in full, the question of its interpretation is open for our consideration. In other words, we are to say whether or not the findings as made sustain the judgment for the plaintiff.

The agreement was in writing, dated November 21, 1910, and executed while the parties were living separate and apart. They had been separated since January 27th of that same year.

As we differ with the lower courts in the interpretation of this instrument, it is here set forth in full as follows:

" 1. The party of the first part hereby agrees to pay

to the party of the second part the weekly sum of Eight dollars for her support and maintenance.

" 2. The party of the second part hereby agrees to accept the said weekly sum of Eight dollars in full payment and discharge of all liability on the part of the party of the first part to support and maintain her.

" 3. The party of the second part agrees that she will not reside in the State of Pennsylvania and will not in any way annoy, interfere with or attempt to communicate with the party of the first part.

" 4. Each party hereto may reside where they please, except that the party of the second part shall not reside in Pennsylvania.

" 5. Nothing herein contained shall be taken or considered as a waiver of any right either party hereto may have to institute proceedings for divorce against each other.

" 6. Should the party of the second part violate the terms of this agreement then the party of the first part shall not be obliged to pay the weekly sum of Eight dollars, but should the party of the first part fail to regularly provide the sum of Eight dollars in accordance with the terms of this agreement, then this agreement shall be null and void and the party of the second part shall be privileged to return at once to the City of Philadelphia or such place in Pennsylvania as she may desire and commence such proceedings for her proper maintenance and support as she may desire.

" 7. In the event of the death of the party of first part the weekly payment of eight dollars shall cease and determine and the party of the second part shall receive such interest in the estate of the party of the first part as provided by the Intestate Laws of the Commonwealth of Pennsylvania as though there had not been an agreement and in the event of the death of the party of the second part, said payment shall cease and the party of

the first part shall have such interest in the Estate of the party of the second part as provided for in Intestacy under the Laws of the State of New York as if no agreement had existed and the parties hereto lived together, except the same be absolved by proceedings in divorce."

Paragraph 7 is the part of the contract in dispute.

Marion F. Fleischman died in the state of New York on the 19th day of May, 1915, without descendants, leaving a last will and testament, wherein and whereby she bequeathed to the plaintiff the sum of five dollars, and the balance of her personal estate amounting to upwards of $9,000 she bequeathed to other persons than her husband. The defendant, Cornelius Furgueson, was appointed executor.

The husband commenced this action against the executor to compel specific performance of the above contract upon the theory that his wife had agreed to die intestate, and that, by the laws of the state of New York, he was entitled in the absence of a will to all of her personal property.

As stated, the courts below have sustained this interpretation of the contract and directed the defendant to pay over all of the wife's personalty, after deducting her debts, if any. In arriving at this conclusion, they have been obliged to eliminate from paragraph 7 the words, " as if there had not been an agreement," and the further clause, " as if no agreement had existed and the parties hereto lived together." That is, paragraph 7 was made to read as follows: " In the event of the death of the party of the first part the weekly payment of eight dollars shall cease and determine, and the party of the second part shall receive such interest in the estate of the party of the first part as provided by the Intestate Laws of the Commonwealth of Pennsylvania; and in the event of the death of the party of the second part, said payment shall cease and the party of the first part shall have such

interest in the estate of the party of the second part as provided for in Intestacy under the Laws of the State of New York." It was said that the omitted words were meaningless, added nothing to the agreement and should be discarded.

This conclusion violates a well known rule of construction applicable to instruments of doubtful meaning. In construing a contract the whole instrument must be considered and from such consideration a conclusion reached as to what the parties intended to do or sought to accomplish. (*Koles* v. *Borough Park Co.*, 142 App. Div. 765, 769.) That interpretation is favored which will make every part of a contract effective. (*Hill* v. *Philo*, 155 N. Y. Supp. 922; 171 App. Div. 962; *Buffalo East Side R. R. Co.* v. *Buffalo Street R. R. Co.*, 111 N. Y. 132, 139.)

The words omitted must have carried some meaning to the minds of the contracting parties, for the same phrase in substance is twice inserted in the paragraph. When the language used is susceptible of more than one interpretation, the courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties and the subject-matter of the instrument. (*Wilson* v. *Ford*, 209 N. Y. 186, 196.)

What were the circumstances here as revealed by the findings? The plaintiff lived in Philadelphia. The wife was to make her domicile in New York state. The husband was to pay her eight dollars a week, which of course would terminate at death. It was unnecessary to state that the payment would terminate at the death of either party, and yet this condition was contained in paragraph 7, indicating that the instrument was not prepared with legal precision and conciseness. Evidently the parties were in doubt as to what effect, under the laws of Pennsylvania or the laws of the state of New York, this agreement might have upon the right of inheritance

in case of intestacy, and out of an abundance of caution paragraph 7 was inserted. As we interpret the language it means that neither party should be barred by reason of this agreement from taking under the statutes of the respective states *in case* of intestacy. This meaning gives effect to the clauses which the courts below have eliminated. The caution manifested by these parties to meet contingencies is indicated by the unnecessary stipulation that the payment of alimony should cease with death.

As applicable to events which have since taken place, the agreement was that the party of the first part " shall have such interest in the estate of the party of the second part as provided for by the intestacy laws of the state of New York *as if no agreement had existed and the parties hereto lived together.*" The interest in the estate which the husband would have if there were no agreement and the parties lived together would, of course, be subject to his wife's right to make a will. The parties stipulated that their rights under the intestacy laws would be the same as if the contract which they were making had never been made. If this contract had not been made and the parties were living together, there would be no existing obligation binding either as to the disposition of his or her estate. And yet the courts below have read this instrument to create a contract when the parties themselves have distinctly stated that at death the rights should be as if no contract existed.

It is quite apparent that Mr. and Mrs. Fleischman intended by the use of the words, " as if no agreement had existed and the parties hereto lived together," that the agreement which they were making was not to prejudice their rights in the case of intestacy, but was not intended to bind them to intestacy.

It is quite natural to suppose that when parties have separated and agree to live in a state of separation their

relations and feelings toward each other have been somewhat strained. The wife had about $10,000. What the husband has we do not know. He agreed to the separation, and from the fact that he assumed the responsibility for his wife's support, it may be inferred that he had no legal grounds for evading it. The findings state that by the laws of New York the husband, on intestacy, would receive all of his wife's personalty, and that by the laws of Pennsylvania the wife, in the event of her husband's death before her own, would receive one-half of his personal estate. Thus we find the parties under strained relationships agreeing, if the construction heretofore given be adopted, to enjoy benefits and privileges which they would not have had if they had lived happily together. In a state of separation, the wife agrees that her husband shall have all her personalty, and he agrees that she shall have one-half of his, and that neither shall make a will contrary to the agreement. If they had lived happily together, either could have made a will disposing of all or part of his or her property to collaterals or strangers. This is a strange, unnatural and unreasonable reading of the contract.

It is a well-established canon of interpretation that in seeking for the intent of the parties the fact that a construction contended for would make the contract unreasonable may be properly taken into consideration. A court will endeavor to give the construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other. (*Schoellkopf* v. *Coatsworth,* 166 N. Y. 77, 84; *Heller* v. *Kalisch,* 141 App. Div. 205, 207; *Sanford* v. *Brown Bros. Co.,* 208 N. Y. 90, 96.)

We, therefore, read this agreement as above indicated, that is, that Mr. and Mrs. Fleischman contracted that their separation agreement should not affect their rights under the intestacy laws of either state in case one should

16

die without leaving a will, but that they did not contract to die intestate.

The judgment appealed from must, therefore, be reversed, and as no evidence can change the result upon another trial, the complaint must be dismissed, with costs in all the courts to appellant.

McLAUGHLIN, J. (dissenting). I am unable to concur that the judgment appealed from should be reversed. The construction which is put upon the seventh subdivision of the contract in the prevailing opinion is, as it seems to me, not justified by the language used and results in doing the very thing which the parties by their agreement sought to avoid. When the contract was prepared each of the parties was represented by counsel. The counsel for the husband prepared in the first instance an agreement, the seventh subdivision of which read: " 7. The death of the party of the first part shall absolve him and his estate from further payments of said weekly sum of Eight Dollars, and likewise the party of the first part shall be absolved in the event of the divorce of the parties." This provision was not satisfactory to the counsel for the wife and under his advice she refused to execute the agreement unless such clause were changed. He then prepared and sent to the counsel for the husband the agreement which finally was executed, the seventh clause of which reads: " 7. In the event of the death of the party of the first part the weekly payment of eight dollars shall cease and determine and the party of the second part shall receive such interest in the estate of the party of the first part as provided by the Intestate Laws of the Commonwealth of Pennsylvania as though there had not been an agreement and in the event of the death of the party of the second part, said payment shall cease and the party of the first part shall have such interest in the estate of the party of the second part as provided for in Intestacy under the Laws of the State of New

York as if no agreement had existed and the parties hereto lived together, except the same be absolved by proceedings in divorce." It is clear to me why the change in the seventh subdivision was insisted upon by the counsel for the wife. Under the agreement as prepared by the counsel for the husband she was to have eight dollars per week. This allowance, of course, would terminate upon the husband's death. She wanted more. She was looking to the future and sought to have a provision inserted so that when he died she would have a share in his estate in lieu of the weekly payments theretofore made. Otherwise there is no sense or meaning in the phrase "the party of the second part shall receive such interest in the estate of the party of the first part as provided by the Intestate Laws of the Commonwealth of Pennsylvania." The words "as though there had not been an agreement" neither add to nor take from the provision with reference to the husband's estate.

It must be assumed that when the seventh subdivision was changed the parties intended to accomplish something. They were not going through an idle ceremony and yet that is precisely the result of what they did if the conclusion reached in the prevailing opinion be correct. The construction put upon the seventh subdivision as amended is the same as would have to be put upon the seventh subdivision had the change not been made. The wife, as indicated, desired to have a provision in the agreement for her support after the husband's death. This was to come from whatever estate he might leave and to get him to make an agreement of this kind it is evident she was willing to make a provision for him in her estate. The parties could do as they saw fit with their respective properties until death made the separation final, and then the one surviving should take from the estate of the other what the statute in case of intestacy would give. We may not like the agreement as drawn; it may be one

that the wife ought not to have made; but she made it after being fully advised on the subject. The mutual promise of one to the other is sufficient consideration. It is not against public policy and I know of no reason why it should not be enforced.

I, therefore, dissent and vote to affirm the judgment.

HISCOCK, Ch. J., CUDDEBACK and HOGAN, JJ., concur with CRANE, J.; MCLAUGHLIN, J., reads dissenting opinion, with whom CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.