HENRY WOLKIND, Appellant, *v.* SARAH BERMAN, Defendant, Impleaded with ISAAC CARREL, Respondent.

Fourth Department, March 18, 1931.

*Edward H. Wolkind,* for the appellant.

*Marvin B. Morrison,* for the respondent.

EDGCOMB, J.   On February 1, 1927, the defendant Sarah Berman executed and delivered to the defendant Isaac Carrel her bond in the sum of $4,575, payable $150 semi-annually from the date thereof for the first year of the term, and $200 semi-annually for the following two years, and the balance three years after the date of the instrument.   A mortgage upon real property situate at Nos. 88–90 East Peckham street in the city of Buffalo, N. Y., was given as collateral security.

On October twenty-sixth of the same year Mr. Carrel bought of the plaintiff, Henry Wolkind, certain real property in the city of Buffalo, and as part payment therefor Carrel assigned to Wolkind the bond and mortgage above mentioned, and guaranteed its payment in accordance with the terms thereof.

The date of this assignment is November 1, 1927, and on that same day Wolkind and Carrel entered into a written contract wherein they agreed that the interest of Wolkind in said bond and mortgage was $3,660, and that he held the balance of the $4,425 due thereon in trust for Carrel.   The parties further agreed that all payments should be made to Wolkind and credited by him on the indebtedness of the mortgagor, and, if the due date specified in the bond and mortgage was accelerated for any reason, and as a result thereof Carrel was compelled to step in and protect his rights, that the date of payment of said indebtedness, so far as Carrel was concerned, should be governed entirely by the terms of the original mortgage.   As between Wolkind and the owner of the premises, the former waived none of his rights.

Thereafter, Wolkind assigned said bond and mortgage to Nathan Goldin, and guaranteed the payment thereof. The latter was not informed of the agreement which Wolkind and Carrel had made on November 1, 1927.

On August 1, 1928, the mortgagor failed to pay an installment of $200 which fell due, and in consequence of such default Goldin, the then owner, elected to declare the whole of the principal of said bond and mortgage due and payable forthwith. Mrs. Berman, the mortgagor, wanted her default waived. Accordingly, Goldin, Berman, Wolkind and Carrel entered into a written contract, dated October 31, 1928, wherein it was agreed that Goldin, the then owner of the bond and mortgage, would waive Mrs. Berman's default, upon condition that she would forthwith pay $360 to apply upon the principal, and all accumulated interest up to August 1, 1928, and that thereafter the balance of said principal should be paid in equal monthly installments of $80, commencing November 1, 1928, and continuing until February 1, 1930, on which date the unpaid balance of said principal should become due and payable. Wolkind and Carrel consented to such modification of the terms of payment, and waived the default of the mortgagor, and agreed that the extension given by Goldin should in no wise curtail, modify or change the effect of their respective guaranties. Except as to the modifications and changes therein recited, it was agreed that the covenants and conditions of the original bond and mortgage should remain in full force and effect.

On November 12, 1928, Wolkind Berman and Carrel entered into another agreement, in which Mrs. Berman promised to pay to Wolkind, " as trustee," one hundred dollars a month, commencing December 1, 1928, " said sum to be used for the purpose of paying all interest and principal payments due on the first and second mortgages, encumbrancing said property, and shall further be used to pay taxes and any other liens or charges against said property." Wolkind agreed that, if said sum was insufficient to pay all taxes, liens and other charges, he would pay the same, and Berman and Carrel promised to reimburse him for such excess payments.

Mr. Wolkind brings this action against Mrs. Berman and Mr. Carrel to recover, (1) the amount due him on said bond and mortgage which he now owns; (2) the amount which he paid for interest, taxes and carrying charges, over and above the $100 per month which he received from Mrs. Berman.

Mrs. Berman defaulted. Carrel answered. When the case came on for trial, no witnesses were sworn. The three agreements above mentioned, together with the assignment of the mortgage

to the plaintiff, and respondent's guaranty, were introduced in evidence, and certain concessions were made, among others that there was due to the plaintiff upon his first cause of action the sum of $2,270, with interest from February 1, 1929, and upon the second cause of action the sum of $1,084.44, with interest from August 1, 1929.

Nathan Goldin dropped out of the picture before the commencement of this action, and Wolkind again became the owner and holder of the mortgage to the extent of $2,270.

The record is not as full and complete as might be desired. However, we think that there is sufficient evidence to enable us to properly dispose of the issues.

The court below held that the agreement of November 12, 1928, modified and changed the terms and conditions of the bond and mortgage, so that the principal thereof was payable at the rate of $100 per month from and after December 1, 1928, and that, as Carrel's guaranty did not require him to pay more than the mortgagor was obligated to pay, there could be no recovery here, except for the unpaid monthly installments of $100, and, as there was no proof that such installments had not been paid, plaintiff could not recover.

We are unable to agree with the construction placed by the trial court upon the contract of November 12, 1928.

It is elementary that in construing a contract the court must, so far as possible, determine and give effect to the mutual intent of the parties when they entered into the agreement.

We find no ambiguity in any of these three contracts. The intent of the parties is apparent from the language of the agreements themselves. Under such circumstances, it is the duty of the court to so construe the instruments as to bind the parties to the extent and in the manner which they contemplated and intended, and not to make for them a new or different bargain. (*Cream of Wheat Co.* v. *Crist Co.*, 222 N. Y. 487, 493.)

A contract must be considered in its entirety, and the intention of the parties must be determined from the entire instrument, and not from some detached portion. (*Fleischman* v. *Furgueson*, 223 N. Y. 235; *Poel* v. *Brunswick-Balke-Collender Co.*, 216 id. 310, 322; *Koles* v. *Borough Park Co.*, 142 App. Div. 765.)

Effect must be given, if possible, to each paragraph and provision of the instrument. (*Sattler* v. *Hallock*, 160 N. Y. 291, 297, 298; *Midland Linseed Products Co.* v. *Viall*, 213 App. Div. 92, 94.)

With these and other general rules of construction in mind, attention should again be called to these three agreements.

The first contract was made on the day Carrel assigned the bond

and mortgage in question to Wolkind. That assignment was absolute on its face, and transferred the entire interest of the assignor in the bond and mortgage. In reality, Carrel retained an interest therein. By this contract respondent and appellant fixed their respective interests in said bond and mortgage, and, as between themselves, took care of the situation which would arise if, by any contingency, the date when said obligation became due should be accelerated. This agreement in no way changes the terms or conditions of the bond and mortgage itself.

After making this first agreement, Wolkind assigned the bond and mortgage in question to Nathan Goldin, and guaranteed payment thereof. Sarah Berman, the mortgagor, failed to pay an installment of principal which fell due on August 1, 1928. To meet this condition, and to take care of the interest of all four parties who were interested, Mrs. Berman, Goldin, Carrel and Wolkind entered into an agreement, by the terms of which Mrs. Berman's default was excused, and the terms of payment of the principal of said bond and mortgage were materially changed from those stated in the instruments themselves. This agreement is dated October 31, 1928. It was acknowledged by Mrs. Berman and by Isaac Carrel on that date. Wolkind acknowledged it on November 12, 1928, and Goldin on December third of the same year. Whether Goldin and Wolkind actually signed the instrument before acknowledging it does not appear.

The third contract, which the trial court has construed as again changing the terms of payment of the bond and mortgage, and which construction is relied upon by respondent to uphold this judgment, is dated November 12, 1928. We have already called attention to its terms. Nothing is said about changing the terms of the payment of the principal of the bond and mortgage. That had been done at about this same time by the second agreement above mentioned, and no reason is suggested why another change was desired. Furthermore, Goldin was the owner of the bond and mortgage. He was not a party to, and did not execute this third agreement, and without his consent the terms and conditions of the original bond and mortgage could not be altered. It is, therefore, apparent that when this third agreement was signed there was no intent on the part of its signers to change in any way the provisions of the bond and mortgage.

It is also difficult to understand how the holder of a mortgage would be willing to substitute an indefinite date of maturity for a definite one, and extend the time of payment in such a manner as to make it uncertain whether the entire principal would ever fall due.

A construction of a contract which is equitable to all parties is to be preferred to an interpretation which gives to one party an unfair and unreasonable advantage over the other. (*Fleischman* v. *Furgueson*, 223 N. Y. 235, 241; *Sanford* v. *Brown Brothers Co.*, 208 id. 90, 96; *Schoellkopf* v. *Coatsworth*, 166 id. 77, 84.) If the contention of the respondent was to prevail, and all that could be collected upon this bond and mortgage was the sum of $100 per month, and before that sum could be credited on the principal there must first be paid all taxes, interest and carrying charges, there is no assurance that there would be anything left to apply on the principal. It is hardly to be conceived that a creditor would be willing to make such a bargain.

Again it is difficult to explain why Mrs. Berman agreed to make these monthly payments of $100 each to Wolkind, " as trustee," if it was intended to substitute such payments for those called for by the second agreement. Why the " trustee," if respondent's contention is correct?

We think that the purpose of the parties in executing this third agreement is apparent. There had already been one default in the payment of an installment of principal due upon the bond and mortgage, and all three parties to this agreement wanted to avoid another. Mrs. Berman, the owner of the property, naturally would not want the mortgage foreclosed. Wolkind and Carrel were interested because of their guaranties. Accordingly, it was arranged that Mrs. Berman would pay Wolkind $100 a month, and that he, for the interest of every one concerned, would undertake to pay all indebtedness which, if not taken care of, would bring about a default, and if these monthly payments were insufficient to bring about the desired result, he would advance a sufficient amount to make up any deficit. There was no reason why Wolkind should be out of pocket for any such payments, and Berman and Carrel agreed to reimburse him for any advances which he might make.

It is apparent that, when the third contract above mentioned was executed, the parties thereto intended to take care of an entirely different situation from that which was covered by the second agreement, and that there was no thought of changing any of the terms or conditions of the bond and mortgage.

If we are right in the construction which we have given to these three contracts, the entire principal of the bond and mortgage became due, under the terms of the second agreement, on February 1, 1930. This action was commenced on the twenty-eighth day of August of that year. It was stipulated in open court that there was due the plaintiff upon the first cause of action set forth in the complaint — the cause of action upon the bond — the sum

of $2,270, with interest from the 1st day of February, 1929. We think that the plaintiff was entitled to judgment for that amount.

In view of the agreement of both defendants in the contract of November 12, 1928, to reimburse the plaintiff for all sums of money which he paid out for interest, taxes, carrying charges, etc., over and above the $100 per month paid to him by Mrs. Berman, and bearing in mind the concession made upon the trial that there was due plaintiff on the second cause of action — the one to recover upon the agreement of November 12, 1928 — the sum of $1,084.44, together with interest thereon from the 1st day of August, 1929, we fail to see how defendant can escape judgment for that amount.

We have, therefore, reached the conclusion that instead of dismissing the complaint, judgment should have been ordered for the plaintiff upon both causes of action for the sums above stated.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment reversed on the law, with costs, and judgment directed for the plaintiff for the sum of $3,354.44, with interest on $2,270 from February 1, 1929, and on $1,084.44 from August 1, 1929, with costs.