BEATRICE VANDERSCHOOT, Appellant, v. HARMON T. CHRISTIANA, JR., et al., Respondents.

Third Department, March 29, 1960.

*Palmer, Hankin & Peyton (John E. Murray* of counsel), for appellant.

*Charles J. Bellew* for respondents.

BERGAN, J. On March 5, 1955 defendants Christiana, who were the owners of a dwelling in Johnson City, signed a real estate broker's agreement with Ron Don Realty. This provided that any member of the Broome County Real Estate Board of Relators "may act as sub-agents in procuring" a purchaser "in accordance with this agreement"; and in event that a sale should be made through such a subagent "all of the terms of this agreement shall apply to such transaction."

Plaintiff is a broker and member of the Broome Real Estate Board. The listing terminated in three months from its date, that is, June 5, but the agreement provided: "In case the said property shall be sold or exchanged by the owner or through any other agent, to a person with whom the broker has negotiated, or whose name has been given by him to the owner during the term of the listing or within six (6) months after the listing has terminated, the broker shall be entitled to full commissions."

On August 19, 1955 plaintiff brought to the Christiana home the defendants Sullivan and introduced them to defendant Gertrude Christiana. The Sullivans were shown through the house; there is a dispute about whether Mrs. Christiana stated in effect she would not then pay any real estate commissions and would not then recognize any broker; or whether, as plaintiff contends, being advised that plaintiff was a broker, she nevertheless showed the Sullivans through the house without objections.

The Sullivans shortly thereafter purchased the property and plaintiff sues for commissions. The court granted defendants' motion at the end of the proof and dismissed the complaint with the statement that there was "not sufficient proof in this case to establish a contract of employment between the plaintiff and the defendant * * * either express or implied".

By express terms of the contract, plaintiff as a member of the board was appointed a subagent for the contracting broker and in respect of such a subagent's activity in procuring a purchaser it was provided expressly that " all the terms " of the contract applied.

The listing terminated June 5, but within six months " thereafter ", if the broker " negotiated " with a purchaser or gave a purchaser's name to the owner, and the property was sold to such a person, the broker, and hence this plaintiff, would be entitled to commissions.

Such a contract could not be defeated by a mere protest or disavowal of responsibility for commissions by the owners if the broker brought a prospective purchaser to the owners within six months " after the listing has terminated ". If the owners sold to such a prospective purchaser the commissions would be earned; if the owners did not then want to pay commissions they could avoid liability by not selling to such a prospect.

The parties might, of course, expressly waive commissions that would otherwise be due under the agreement; that is, if the owners said that they would show the house on condition that the broker would not take commissions and the broker agreed to this proposal; but no such theory of waiver is pleaded in the answer and the proof suggests little to support it.

We are of opinion the complaint should not have been dismissed on the theory there was no " contract of employment ". Such a contract of employment exists by virtue of the terms of the written agreement as to all members of the board; and liability may be incurred if the owner accepts the benefits of services of any such members coming within the terms of the contract which result in an actual sale of the property.

Nor is there any ambiguity about what the rights of the owner and of the original broker, or members of the realty board coming within the contract's definition of subbrokers, are for the six months' period after the listing terminates. The rest of the contract casts no doubt about these terms and is quite consistent with them.

During the three months' listing period the named broker was entitled to commission whether this broker sold the property; or whether any other broker sold it; or whether the owner sold it. But when the three months' period ended, the contract provided in plain words that if the property be sold to a person whose name was given to the owner by the broker within the listing period or six months " after the listing has terminated " commission shall be earned.

These words are not obscure; and they are not ambiguous. They cover a situation in which the buyer's name is given by the broker during the exclusive agency period but no '' sale '' is made '' during the exclusive agency period '' but is made later; and they cover a six-month period thereafter when the property is sold to a person whose name is given by the broker to the owner.

This is entirely consistent with the rights which are separately and expressly provided for in event of a sale actually made during the exclusive listing period. They provide for an additional and a different situation, that is, a name given to the owner by the broker during a total period of nine months and actually acted on to the owner's benefit by a sale after, as well as during, the exclusive listing period. This does not provide indefinite rights. It is very specific about the total period in which rights and liabilities under it may be incurred.

If the contract is not ambiguous the testimony of what the broker said to the owner about his interpretation of its terms would be irrelevant as far as parties beneficially interested in the contract are concerned, and the nonsuit must assume the most favorable aspect of plaintiff's proof.

No cause of action, however, has been demonstrated against the purchasers, defendants Sullivan.

The judgment should be modified on the law and the facts by reversing so much thereof as dismisses the complaint as to defendants Christiana, and a new trial ordered as to such defendants, with costs to appellant to abide the event; and the judgment in favor of defendants Sullivan should be affirmed, with costs to such defendants against plaintiff.

REYNOLDS, J. (dissenting). In this case, the court has been called upon to interpret the Uniform Multiple Listing Contract of the Broome County Real Estate Board. The defendants Christiana desirous of selling their home signed a real estate broker's agreement with one Stocum who was doing business as the Ron Don Realty in Broome County, giving to him the exclusive right and privilege for a period of *three months* to sell or exchange their home. During this period whether the premises were sold through the efforts of the broker or not he would be entitled to a commission. This three months' period expired on June 5, 1955. It was further provided and as the testimony of witness Stocum clearly shows there was a complete understanding between the respondents Christiana and Stocum that in the event the property was sold within the six months immediately following the expiration of the exclusive agency

period, to any person, with whom the broker had negotiated or whose name had been given to the owner by the broker during the exclusive three-month period, the broker would be entitled to a commission. This six months' additional period to protect the efforts of the broker during his exclusive three months' listing is known as a " protective period " and is in most real estate .contracts State-wide usually in more unequivocal language. The multiple listing agreement further provided that any .member of the Broome County Real Estate Board " may act as subagents in procuring  *  *  * a purchaser in accordance with this agreement," and in event that a sale should be made through such a subagent " all of the terms of this agreement shall apply to such transaction." At most subagents enjoy the same rights and are protected to the same extent as the broker (Stocum) under the contract.

In this case plaintiff-appellant, a subagent, brought to respondents the " prospects " Sullivan on August 19, 1955, within six months after the expiration of the exclusive listing.

The difficulty rises with the inartistically drawn Multiple Listing Contract. After giving the broker the sole exclusive right and privilege for three' months to sell or exchange the property,, the following sentence appears: " In case the said property shall be sold or exchanged by the owner or through any other agent, to a person with whom the broker has negotiated, or whose name has been given by him to the owner during the term of the listing or within six (6) months after the listing has terminated, the broker shall be entitled to full commissions."

A literal reading and fair interpretation of this clause read alone would place *no time limit whatever* upon the broker's right to a full commission, if the owner sells to a person with whom the broker negotiated or whose name was furnished by the broker within nine months of the hiring (i.e., within six months after the listing has terminated). The plaintiff herein presses for this construction of the agreement (undoubtedly to the great discomfort of the Broome County Real Estate Board, for there would be precious few listings signed by the public if the owners knew that this ambiguity in the contract might be construed as set forth above). I am unable to agree that this contract is not ambiguous. The basic clause providing for a three months' exclusive listing becomes a nine-month period when read with the clause quoted above. This result the record shows clearly was never intended. Substantially all of the testimony in the trial below was directed to resolving the ambiguity and the intent of this multiple listing agreement but this ambiguous contract must be construed against the

plaintiff who, as a member of the real estate board, is in the same position as though she had proposed it. (See *Gillet* v. *Bank of America,* 160 N. Y. 549, 554–555; *Foelsch* v. *Eaton,* 7 A D 2d 730; 3 Williston, Contracts [rev. ed.], § 621.)

A basic principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract. (See, e.g., *Fleischman* v. *Ferguson,* 223 N. Y. 235, 239; *First Nat. Bank* v. *Jones,* 219 N. Y. 312, 315; 1 Restatement, Contracts, § 235, subd. [c].) "That interpretation is favored which will make every part of a contract effective." (*Fleischman* v. *Furgueson, supra,* p. 239; *Rentways, Inc.* v. *O'Neill Milk & Cream Co.,* 308 N. Y. 342, 347.)

Stocum, the broker named in the contract, was called by plaintiff as a witness and on cross-examination testified that he explained the meaning of the contract to the owners before they signed it, as follows:

" Q. What did you tell them? A. That it was a three months' exclusive listing with our office and at any time their property was sold during the term of the listing, we would be entitled to commission at the rate of 5% of the purchase price of the property.

" Q. That would be during the three months' exclusive listing? A. Yes, except for the one clause in there relating to the fact that any person whose name had been given by him to the owner during the term of the listing, or within six months after the listing had terminated, then the broker would be entitled to full commission.

" Q. Did you tell them what the term of the listing was? A. Yes, sir.

" Q. What did you tell them? A. That the term of the listing was for three months. * * *

" Q. Did you further call to their attention or explain to them or have any conversation with them as to what this six months' period you have referred to meant after the expiration of the exclusive listing period? A. Yes sir, it was always our custom to explain everything as we went over the contract with the people.

" Q. To be sure they understood what they were signing? A. True.

" Q. What did you tell Mr. and Mrs. Christiana about that? A. That if anyone had given a person's name to them during the term of the listing and it was sold six months after the listing had expired to that person by the broker or a member broker

or one of his agents in the multiple listing system, then they would be entitled to a commission.

"Q. If I understand you then, you told Mr. and Mrs. Christiana if these premises were sold in the six months next following the expiration of the listing, to any person whose name was given to them during the three months, would be entitled, or rather they would have to pay them a commission? A. Yes sir.

\* \* \*

"Q. To put it another way, after June 5th, 1955, in so far as this listing was concerned any broker who dealt with the Christianas and produced somebody whose name was not given to them during the three months' period would not be entitled to a commission under this listing? A. No, that's right."

Such testimony would clearly seem to resolve the ambiguity against the plaintiff. In other words, the construction put upon the contract by the parties to it was that the hiring was for three months with the proviso — *for the protection of the broker* — that the term would continue for six months as to prospective buyers produced by the broker within the period of his hiring.

A contract giving all members of the local realty board an unlimited agency to sell the property was certainly not the intention of the parties. The salient factor is the term of the contract which was three months. The six months "protective period" applies to subagents in the same way it applied to the broker. Accordingly plaintiff had no contract based on this agreement with defendants when she produced the purchasers.

The fact that the judgment appealed from is a nonsuit requiring every favorable inference in plaintiff's favor does not affect the result. The only testimony on the execution of the contract and the circumstances surrounding its execution, and the understandings and discussions as to intent were all given by plaintiff's witness Stocum whose testimony is binding on her. His testimony defeats her on this record.

The judgment should be affirmed.

Coon and Gibson, JJ., concur with Bergan, J; Reynolds, J., dissents and votes to affirm, in an opinion.

Judgment modified, on the law and the facts, by reversing so much thereof as dismisses the complaint as to defendants, Christiana, and a new trial ordered as to such defendants, with costs to the appellant to abide the event, and the judgment in favor of the defendants Sullivan affirmed, with costs to such defendants against plaintiff.