RALPH C. FARNSWORTH, Respondent, v. THE NEW YORK CENTRAL
    AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Obligation of a common carrier as to produce shipped to a place beyond the terminus of its line — when not bound to keep them iced after their delivery to a connecting carrier.*

The receipt of goods by a common carrier, for shipment to a place beyond the terminus of such carrier's road, does not import a contract to carry them to their final destination.

In the absence of a special contract, the carrier discharges his full duty to the shipper by delivering such goods in good condition to the connecting carrier.

Where a carrier accepts a quantity of produce for shipment to a place beyond the terminus of its road and issues to the shipper bills of lading containing the following clause: "3. No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee. * * *," the fact that the bills of lading contained the words "ice when needed" does not constitute a special contract, under which the carrier becomes liable to the shipper for the failure of a connecting carrier to properly ice the produce while on such connecting carrier's road.

*Semble,* that the goods having been shipped in refrigerator cars, the connecting carrier would be liable to the shipper for the damage sustained by him in consequence of a failure to properly ice the produce, even if the words "ice when needed" had not been written in the bills of lading.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Orleans on the 20th day of April, 1903, upon the decision of the court, rendered after a trial at the Erie Special Term, overruling the defendant's demurrer to the plaintiff's complaint.

The action was commenced on the 8th day of February, 1903, to recover damages sustained by the plaintiff because of the alleged failure of the defendant to properly transmit a quantity of cabbage from Holley, N. Y., to Pittsburg, Penn., on account of which the cabbage was destroyed and was a total loss to the plaintiff.

*H. E. Rourke* and *Charles A. Pooley,* for the appellant.

*Ernest B. Millard,* for the respondent.

McLENNAN, P. J.:

In the complaint demurred to it was alleged, in substance, that the defendant was a common carrier for hire; operated a railroad within

the State of New York, and carried by its own and connecting lines goods between Holley, N. Y., and Pittsburg, Penn.; that on April 29, 1902, the plaintiff delivered to the defendant at Holley, for shipment to Pittsburg, twenty-four tons of cabbage, for which the defendant issued to him two bills of lading (one for each car), which were annexed to the complaint and made a part thereof; that the words "Ice when needed" were written by the defendant in both bills of lading before they were issued to the plaintiff. It was also alleged that the cabbage was placed in refrigerator cars, which were properly iced, on defendant's railroad at Holley; that they continued to be properly iced while they remained on defendant's road, but that after said cars left defendant's road, which was at its terminus, near Buffalo, N. Y., and were turned over to the connecting road, they were not properly iced or iced at all, and, in consequence thereof, the cabbage was totally destroyed before it reached its destination, and thereby the plaintiff sustained damage in the sum of $840, for which he demands judgment, with costs.

The bills of lading contained on their face the following:

" Received   *   *   *   from R. Farnsworth (the plaintiff) the property described below, in apparent good order, except as noted, *   *   *   marked, consigned and destined as indicated below, which said company agrees to carry to said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed   *   *   *   that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (see conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns as just and reasonable."

Upon the portion of the bills of lading left blank was the following in writing:

| "Marks. | Description of Articles. | Weight Subject to Correction. |
| --- | --- | --- |
| "D. Hays, Pittsburg, Pa. | Cabbage in bulk.  O. K. Ice when needed. More or less company not responsible for weight, count or condition. | 24,000" |

Among the conditions upon the back of the bills of lading was the following:

"3. No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee. * * *."

The complaint was demurred to on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and from the judgment entered upon such decision this appeal is taken.

It is the settled law in this State that the receipt of goods by a common carrier for shipment to a place beyond the terminus of such carrier's road does not import a contract to carry them to their final destination. In the absence of a special contract the carrier discharges his full duty to the shipper by delivering such goods in good condition to the connecting carrier. (*Condict* v. *G. T. R. Co.*, 54 N. Y. 500; *Rawson* v. *Holland*, 59 id. 611; *Shiff* v. *N. Y. C. & H. R. R. R. Co.*, 16 Hun, 278.)

It is urged on behalf of the plaintiff that the defendant, by inserting in the bills of lading the words " Ice when needed," in effect made a special contract by which it became obligated to see to it that the cabbage was properly iced while on all connecting routes and until it reached its final destination, and that the plaintiff is entitled to recover from the defendant any damage which he sustained by its failure to discharge such alleged obligation.

We think the words " Ice when needed," when taken in connection with the other language used in the bills of lading, are not susceptible of such meaning or interpretation. It would be unreasonable to suppose that the parties intended, simply by the use of those words, that the defendant should be under the necessity of keeping the cabbage properly cooled while upon all connecting lines, when as to all other conditions which might affect it concededly the defendant was only required to protect it while upon its own road and until properly delivered to the connecting carrier. The cabbage having been placed in refrigerator cars, which clearly indicated it was considered essential that it should be kept cool while in transit, it would seem if the defendant or the connecting lines failed to keep such cars properly supplied with ice, and the cabbage was thereby

damaged that the carrier responsible for such failure would be liable to the plaintiff for the loss sustained, even if the words "Ice when needed" had not been written in the bills of lading. From such circumstances and independent of those words it might be found that the defendant agreed to keep the cabbage properly cooled until it delivered the same to the connecting road. If there had been written in the bills of lading the words "Cabbage to be kept dry," it would have added nothing to the obligation of the defendant, because the goods shipped were of such a character as to make that necessary for their proper transportation; but it would hardly be urged that the insertion of such words would render the defendant liable in case the cabbage was exposed to the rain, without the fault of the defendant, while upon a connecting road.

In the case of *Shiff* v. *N. Y. C. & H. R. R. R. Co.* (*supra*) it appeared that Shiff contracted with the "Red Line," composed of the New York Central and several other connecting roads, for the transportation of a quantity of lemons and oranges from the city of New York to St. Joseph, Mo. He delivered the goods to the New York Central at New York, and received from the agent of the "Red Line" an ordinary bill of lading with the heading "Great American 'Red Line' route. From the Atlantic to the Pacific Oceans without change of cars," but which contained a condition (similar to the one in the case at bar) in effect limiting the liability of any one of the connecting carriers to damages which might result to such goods while upon such carrier's road. It was found that the plaintiff and the "Red Line," through its agent, made a verbal contract which was valid and binding, by which the goods should be carried through to St. Joseph in a refrigerator car. It appeared that the defendant put the goods in a refrigerator car, properly transported them over its road and delivered them to the connecting carrier in good condition. While upon one of the connecting roads the refrigerator car was disabled, and the lemons and oranges were transferred to an ordinary box car and sent to their destination, with the result that they were frozen and totally destroyed. Shiff brought an action against the New York Central Railroad Company, to which the goods were delivered in New York, to recover the damages sustained. It was held he could not recover; that the defendant in that case had discharged its full duty by properly

transporting said goods in a refrigerator car over its route, and delivering the same in good condition to the connecting carrier.

We conclude that the defendant, having delivered the cabbage properly iced and in good condition to the connecting carrier, was not liable for any damage which came to it through the fault or neglect of some other carrier.

. It follows that the interlocutory judgment should be reversed, with costs.

All concurred.

Interlocutory judgment and order overruling defendant's demurrer reversed, with costs, and demurrer sustained, with costs, with leave to plaintiff to plead over upon payment of costs of the demurrer and of this appeal.