(112 App. Div. 612)

## ISHAM v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

**1. CARRIERS—CARRIAGE OF GOODS—DELAY.**

Where a carrier by rail undertook to transport goods to a point beyond its terminus, the transfer from the terminus to the destination to be made without charge to the shipper, the carrier was liable for delay at its terminus.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 766–769.]

**2. SAME—ORDER OF PERSON NOTIFIED OF SHIPMENT.**

Where goods were billed for shipment to a point beyond the terminus of a railroad, with a direction to notify a third person, and on their arrival at the terminus the railroad notified the third person, and on his order retained them at that point for a week, it is liable for the delay; the order from the third person not being sufficient to justify it.

**3. SAME—CONNECTING CARRIERS.**

Where goods were delivered to a carrier for shipment to a point beyond the terminus of its road, under a bill of lading containing a provision that the carrier should not be liable after the property was ready for delivery to the next carrier, it is nevertheless liable for withholding for seven days delivery to the lighters which were to transfer the goods to their destination.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 817–822.]

**4. SAME—NOTICE OF CLAIM—WAIVER.**

Where a bill of lading contains a provision that claims for loss or damage must be made in writing within 30 days, this provision is waived where the railroad company deliberated on a claim made after the expiration of the 30 days, and placed its refusal to pay the claim on the merits.

**5. DAMAGES—REDUCTION—EVIDENCE.**

In an action for delay in the delivery of a shipment of potatoes, by reason of which they were frozen before delivery, evidence of their sale by a commission merchant after delivery was admissible where the transaction was honest, and there was no overcharge for the services of the commission merchant.

Williams, J., dissenting.

Appeal from Trial Term, Livingston County.

Action by Frank N. Isham against the Erie Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The action is to recover damages for negligence, and the charge is that the defendant improperly detained at Jersey City two car loads of potatoes belonging to the plaintiff until they were frozen. At the close of the evidence, by consent of the parties, the jury was discharged, and the issues submitted to the court. A decision was made containing findings of fact and conclusions of law. Nearly all of the facts were stipulated, and there was no conflict in those proved.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

F. A. Robbins, for appellant.
Royal R. Scott, for respondent.

SPRING, J. The defendant's railroad extends from Avon, in the state of New York, to Jersey City, N. J. The defendant received

from the plaintiff at Avon two car loads of potatoes; one February 2, 1899, which reached Jersey City on February 5th, and the other was received February 4th, arriving at Jersey City on the 6th. These car loads were to be transported to Palmer's dock, Brooklyn, and which is reached by lighters from defendant's eastern terminus at Jersey City. The plaintiff was the consignee named in each bill of lading, and it contained the direction, "Notify Casey & Rosenblum," who were the intended purchasers, and whose place of business was in Brooklyn.· The destination noted on the bill of lading was "Palmer's dock, Brooklyn, N. Y." The evidence does not precisely disclose the defendant's connection with the dock mentioned. It does appear that Carpenter, the chief clerk in the management of the dock, and employed by its owner, was also the agent of the defendant, and also that there was no lighterage charge for transferring the freight from Jersey City to the dock. On the morning of the 6th a list of the cars in the terminal yards of the defendant at Jersey City in transit for Palmer's dock, and which included the two car loads of potatoes consigned to the plaintiff, was delivered to Carpenter, by the defendant. He promptly notified Casey & Rosenblum of the arrival of the cars at Jersey City, and they requested the defendant to hold said cars at Jersey City subject to their orders, as "they were overstocked, and did not want them brought over on that account, and that the weather was against the market, and therefore it would suit them better to leave them in Jersey City." The defendant acceded to this request until February 13th, when "said cars were ordered to Palmer's dock, but owing to the severity of the weather at that time it was impossible for defendant to flat them until February 18th, on which date they reached Palmer's dock, and were refused by said firm of Casey & Rosenblum." The potatoes when received at Palmer's dock were frozen, and the damage to them occurred during the severe storm between the 13th and 18th of February. After the refusal of Casey & Rosenblum to accept the potatoes, the plaintiff at Avon was notified by wire, went to Brooklyn, and caused the potatoes to be sold by a commission house. The bills of lading contain the provision:

"If the word 'order' is written immediately before or after the name of the party to whose order the property is consigned, the surrender of the bill of lading, properly indorsed, shall be required before the delivery of the property at destination, as provided by section 9 of the conditions of the uniform bill of lading, on the back hereof."

The form of shipment was, "Marked consignee, order F. N. Isham, destination Palmer's dock, Brooklyn, N. Y." The import of this method was that the goods were shipped to be paid for on delivery, and in order to make this plan effective the bills of lading must be produced before the potatoes could be turned over to Casey & Rosenblum. The plaintiff at the time of the delivery of the potatoes to the defendant at Avon caused drafts to be made on Casey & Rosenblum, and attached to the bills of lading, and they were ·by the local bank at Avon transmitted to a bank in Brooklyn, to be delivered to Casey & Rosenblum upon the arrival of the goods and upon acceptance and payment of the drafts. Ordinarily, where goods are received by a common carrier for transportation over a connecting line, its liability

terminates upon the proper delivery to the succeeding carrier. Farnsworth v. N. Y. C. & H. R. R. R. Co., 88 App. Div. 320, 84 N. Y. Supp. 658. That rule does not obtain in the present case. The evidence is sufficient to warrant the finding of fact made by the court that the defendant undertook to transport these potatoes to Palmer's dock. The defendant kept its representative at this dock. The transfer was without charge to the shipper, and the first stipulation entered into concedes that the potatoes were "to be transported by defendant to Palmer's dock, Brooklyn, New York."

Irrespective of that question, however, we think negligence is fairly imputable to the defendant. The plaintiff was the consignee of the goods, so the defendant was apprised of his ownership. The defendant knew that the destination was Palmer's dock, and it certainly had no authority, while the potatoes were in transit, affirmatively to interfere with their onward course. The direction in the bills of lading to notify Casey & Rosenblum did not authorize the defendant to change its contract with the plaintiff. The potatoes were at Jersey City February 6th, and by ordinary carriage they would reach Palmer's dock on the same day. The interests of Casey & Rosenblum, and the plaintiff were not identical. The defendant, without communicating with the plaintiff, followed the request of Casey & Rosenblum, and held the potatoes at its yard at Jersey City for a week, during any day of which they could have been readily delivered at their destination. They departed from their obligation to the consignee, and recognized without warrant Casey & Rosenblum as the consignees, ignoring the plaintiff entirely. The direction to notify Casey & Rosenblum did not justify a notification while the goods were en route. The object of the notice prescribed in the waybills was to advise the proposed purchasers that the potatoes had arrived at their destination, and were ready for delivery to them upon the production of the bills of lading. In that way the sale would be consummated. Notification while the goods were in transit subserved no such purpose. Much less did the direction imply that the defendant was to follow the request of Casey & Rosenblum in the matter of the shipment of the potatoes while in transit. The interest of Casey & Rosenblum did not become effective until they had in their possession the bills of lading, and the defendant understood those instruments would not be delivered until the goods were at Palmer's dock. Casey & Rosenblum asked for the delay because "the market was overstocked * * * and the weather was against the market"; indicating that the request was solely for their benefit. The direction to notify Casey & Rosenblum was notice to the defendant that they were not consignees. Furman v. Union Pacific R. R. Co., 106 N. Y. 579, 13 N. E. 587; North Penn. R. R. v. Commercial Bank, 123 U. S. 727–736, 8 Sup. Ct. 266, 31 L. Ed. 287. In the first case cited, 100 bags of peanuts were shipped from Norfolk, Va., to Denver, Colo. The bill of lading contained the following, "Marked, Y. ——— order. Notify Zucca Bros." No consignee was named. The defendant delivered the goods to Zucca Bros. at Denver without the production of the bill of lading. The court, in construing the effect of this clause, said:

"Here is no statement that Zucca Brothers are the consignees. The very presence of the word 'notify,' in its relation to them, shows that they are not

intended as consignees. If they were, the word is wholly unnecessary. It is the duty of the carrier to notify the consignees of the arrival of the goods. Price v. Powell, 3 N. Y. 322. To place in the bill of lading a direction to notify certain persons to whom, if consignees, it was the carrier's duty to deliver, or at least to notify of the arrival of the goods, is a plain notice that, in the absence of further directions, they are not the consignees."

The bill of lading contains the provision common to such contracts that "no carrier * * * shall be liable after said property is ready for delivery to the next carrier or consignee."

The counsel for the appellant invokes the rule adverted to that the liability of the defendant terminated when the potatoes were ready for delivery to the lighters. In addition to the facts enumerated, showing, as we believe, that the principle is not applicable to this case, there is another adequate reason why the rule does not obtain. We think the evidence warrants the conclusion reached that the defendant is chargeable with negligence in withholding the delivery of these potatoes in Jersey City for seven days. It was in the month of February, when freezing weather was probable. In adopting the request of a third party in such circumstances, and not delivering the potatoes in the usual way, the defendant is chargeable, not merely with breach of its agreement, but with negligence.

The exemption from liability urged does not exonerate the defendant from the exercise of a fair degree of diligence as the carrier of the goods of the shipper (Mynard et al. v. Syracuse, etc., R. R. Co., 71 N. Y. 180, 27 Am. Rep. 28; Rathbone v. N. Y. C. & H. R. R. R. Co., 140 N. Y. 48, 35 N. E. 418; Jennings et al. v. Grand Trunk R. R. Co., 127 N. Y. 438–450, 28 N. E. 394), and there will be no enlargement of the limitations to relieve a common carrier from responsibility for loss resulting from its negligence (cases cited, and Security Trust Co. v. Wells Fargo & Co., 81 App. Div. 426–431, 80 N. Y. Supp. 830, affirmed on opinion below, 178 N. Y. 620, 70 N. E. 1109).

Condition 3 on the bill of lading contains the following:

"Claims for loss or damage must be made in writing to the agent at the point of delivery promptly after arrival of the property, and, if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event."

No claim was presented to the agent of the defendant at Palmer's dock or at Jersey City. On the 21st of June, 1899, more than three months after the delivery of the potatoes at Palmer's dock, a written claim was presented to the division freight agent of the defendant at Rochester. This officer rejected the claim in a letter September 16, 1899, setting forth his reasons at large, and which are substantially the same as are now urged to defeat the claim. The omission to present the claim within 30 days was not one of the reasons assigned for its rejection. The defendant deliberated upon the claim for three months, and placed its refusal to pay on the merits, and thereby waived the 30-day limitation. Falkenberg v. Erie R. R. Co., 28 Misc. Rep. 165, 59 N. Y. Supp. 44; Frankfurt et al. v. Weir, 40 Misc. Rep. 683, 83 N. Y. Supp. 112; Jennings v. Grand Trunk Ry. Co., 52 Hun, 227, 5 N. Y. Supp. 140. We doubt whether the limitation applies to a case like the present. The provisions of the bill of lading extending immunity to the

defendant from liabilities imposed upon it as a common carrier, not including acts of negligence, the limitation prescribed ought not to embrace loss due to its lack of care. Security Trust Co. v. Wells Fargo & Co., supra; Porter v. Southern Express Co., 16 Am. Rep. 762.

The plaintiff while in Brooklyn delivered the frozen potatoes to a respectable commission merchant, and realized from the two cars $121.46. The evidence of this transaction was objected to, on the ground that it did not tend to establish the proper measure of damages. The value of the property at the time and place of shipment is the basis, according to the conditions of the bill of lading (condition 3), and the value at Avon and the quantity of potatoes loaded are conceded. The damages as awarded were ascertained by deducting from the stipulated value the amount received by the plaintiff from the commission merchant.

If a carrier is liable for damages for delay in the delivery of goods, the measure of damages is the difference in value of the goods at the time and place they should have been delivered and the time when in fact they were delivered. Sherman et al. v. Hudson R. R. Co., 64 N. Y. 254. So, if there is no delivery at all, the carrier is liable, as a general rule, for the value of the goods at the place where delivery was to be made, with interest thereon (Sedgwick on the Measure of Damages, p. 355), although the rule is not an inflexible one. The measure in each of these cases is easily fulfilled, and carries out the principle of indemnity to the shipper, which is the controlling principle where damages for loss of personal property are recoverable. Likewise, where there is a breach of an executory contract to sell and deliver personal property, the measure of damages is usually the difference between the contract price and the market price when and where delivery was to be made. Messmore v. The N. Y. Shot & Lead Co., 40 N. Y. 422–427. Each of these rules is of general application, but subject to variation, in order to compensate the loser for damages sustained at the instance of one who was responsible for the loss.

In the present instance the plaintiff was obliged to dispose of the potatoes promptly, in order to lessen the damages as far as practicable. There would be no definite market for frozen potatoes. He accordingly turned them over to a reliable commission merchant, known to him, and accounted for what he received. No question is raised as to his failure to respond fully for what he derived from the commission merchant, and no claim is made that the latter was remiss in any way. Keeping in mind the condition of the potatoes, the necessity for prompt action, and the liability of the defendant to make whole the plaintiff for his loss, we think the rule adopted was just to both parties. The general rule invoked by the counsel for the appellant could not prevail, for it is clear the plaintiff would not be able to establish a fixed market value in New York or Avon for potatoes injured as these were. Whether of any value at all depended upon the ability of the merchant to peddle them out speedily. What the plaintiff "realized" from the sale is some evidence of its value, like evidence of the price obtained at a private sale; and, if there is no other proof on the subject, is sufficient to warrant a recovery of that sum. Parmenter v. Fitzpatrick,

135 N. Y. 190, 31 N. E. 1032; Matter of Johnston et al., 144 N. Y. 563–565, 39 N. E. 643.

It is important to note that the only objections to the evidence were that it was "incompetent, and not the proper measure of damages." It was competent to show what the plaintiff realized, for in that way the extent of his loss would be ascertained. The net sum realized by him was the proper measure of damages, providing the transaction by the commission merchant was honest, and he obtained all that the potatoes were fairly worth, and made no overcharge for his services. If the claim had been made that the merchant did not realize a fair price, or did not account honestly, or that there was a market price for frozen potatoes, these objections might have been met and explained. There was no objection to the mode of proof, and no contradictory evidence given, and in all the circumstances we think there was a proper basis for the damages awarded.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except WILLIAMS, J., who dissents, and NASH, J., not voting.