LAWRENCE ATTERBURY et al., as Executors of ANNIE
T. L. ATTERBURY, Deceased, Appellants, *v.* THE BANK
OF WASHINGTON HEIGHTS OF THE CITY OF NEW YORK,
Respondent.

Contract — landlord and tenant — lease — banks and banking
— ultra vires — trade acceptance — distinction between trade
acceptance and bankers' acceptance — courts will not make
agreement for parties but circumstances may be resorted to
to determine their standpoint — inconsistent provisions of
lease under one of which lessor is permitted to apply deposit
given as security for payment of rent to deficiency accruing
after summary proceedings — language of other paragraph
which had been altered at instance of lessee will not be extended
or given effect beyond its fair significance — acceptance by
bank of trade acceptance not an ultra vires contract of surety-
ship — section 106 of Banking Law prohibiting banks from
accepting draft payable at future date exceeding one year
not applicable — obligation of negotiable instrument repre-
senting between bank and drawer a transaction without con-
sideration or ultra vires not defeated when taken by third
party before maturity without notice of defect.

1. The courts will not make an agreement for parties but will
ascertain what their agreement was. Although a written agreement
cannot be varied by the circumstances out of which it grew and
which attended its adoption, the circumstances may be resorted to
for the purpose of ascertaining the standpoint of the parties in
regard thereto.

2. A trade acceptance is a draft or bill of exchange drawn by the
seller on the purchaser of goods sold and accepted by such purchaser,
while a bankers' acceptance is a draft or bill of exchange of which
the acceptor is a bank or banker engaged generally in the business of
granting bankers' acceptance credits.

3. Where, in an action to compel payment of a trade acceptance,
given as security for the payment of rent and accepted by defendant,
it is recognized that, under a paragraph of the lease, the lessor is
permitted to apply the amount of the deposit to rent deficiency
accruing after summary proceedings, but certain words therein,
inconsistent with a prior paragraph, are seized upon as a basis for a
holding that the security is not applicable to the deficiency, and there

is evidence to show that the prior paragraph was altered at the instance of the lessee, and where, in the light of the circumstances, by a fair and reasonable reading of the terms of the lease, which stands as the contract of the parties, there being no claim of mistake, it is clear that the intention of the parties as expressed therein was to relieve the lessee of personal liability only and thus to limit his liability to the amount of the security, the alterations are not to be extended and given effect beyond their fair significance.

4. A contention that defendant in accepting the trade acceptance entered into an *ultra vires* contract of suretyship cannot prevail. The trade acceptance was deposited as security for the lease but the defendant did not deposit it as security, and in no sense became a surety on the lease.

5. Nor may defendant escape liability on the ground that the acceptance in question was payable at a future time exceeding one year from its date and that by section 106 of the Banking Law (Cons. Laws, ch. 2) banks are prohibited from accepting a draft payable at a future date exceeding one year. The provision of the statute is not applicable where the bank is the purchaser of goods sold. The trade acceptance recites that " the obligation of the acceptor hereof [the bank] arises out of the purchase of goods from the drawer." The transaction at its face value is a purchase on time evidenced by an instrument for the payment of money and is not the establishment of a credit by the acceptance of a draft drawn on the bank by its customer.

6. As the trade acceptance was, on its face, a negotiable instrument, a regular and proper obligation of the bank taken from the lessee by the lessor before maturity without notice of any defect, the enforcement of its obligation cannot be defeated by the claim that as between the bank and the drawer it represented a transaction without consideration or *ultra vires*. (Neg. Inst. Law [Cons. Laws, ch. 38], § 91.)

*Atterbury* v. *Bank of Washington Heights*, 211 App. Div. 90, reversed.

(Argued October 20, 1925; decided November 24, 1925.)

APPEAL from a judgment, entered December 8, 1924, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiffs entered upon a verdict directed by the court and directing a dismissal of the complaint,

*Herman S. Hertwig* for appellants. Only the personal liability of the tenant for rent deficiency was limited, in the event of dispossess proceedings, to the time preceding the annulment of the lease; the security continued liable for any deficiency " whether such rent deficiency accrued before or after summary proceedings." (*Michaels* v. *Fishel,* 169 N. Y. 381; *Baylies* v. *Ingram,* 84 App. Div. 360; *Anzolone* v. *Paskusz,* 96 App. Div. 188.) Aside from the question of rent deficiency, the landlord had the right to enforce the trade acceptance and hold the proceeds as security under the lease against any loss resulting from breach of other covenants by the tenant. (*Halpern* v. *Manhattan Avenue Theatre Corporation,* 173 App. Div. 610; 220 N. Y. 655.) The trade acceptance was, on its face, a regular and proper obligation of the bank; it was accepted by Mrs. Atterbury before maturity and without notice of any defect, and the enforcement of it cannot be defeated by the claim that, as between the bank and the drawer, it represented a transaction in realty without consideration, *ultra vires* and void. (*Farmers & Mechanics Bank* v. *Butchers & Drovers Bank,* 16 N. Y. 125; *Genesee Bank* v. *Patchin Bank,* 19 N. Y. 312; *Armour* v. *Michigan Central Railroad Co.,* 65 N. Y. 111; *Cheever* v. *P., S. & L. E. R. R. Co.,* 150 N. Y. 59; *Moch* v. *Bryant Park Bank,* 197 App. Div. 78.)

· *Isaac N. Jacobson* and *Warren C. Fielding* for respondent. The lease having been canceled and the relation of landlord and tenant annulled by the issuance of the warrant in summary proceedings, the lessee was entitled to the return of the security, and the lessor having in her possession, exclusive of the instrument sued on, a greater sum than then due, the complaint was properly dismissed. (Civ. Pr. Act, § 1434; *Hoffman Brewing Co.* v. *Wuttge,* 234 N. Y. 469; *Caesar* v. *Rubinson,* 174 N. Y. 492; *Michaels* v. *Fishel,* 169 N. Y. 381; *Chaude* v. *Shepard,* 122 N. Y. 397; *Hall* v. *Gould,* 13 N. Y. 127, 134.) The

respondent's acceptance for payment was merely its guaranty, for the lessee's accommodation, of performance by the lessee, and was unauthorized, without consideration, and is *ultra vires* and void. (*Gause* v. *Commonwealth Trust Co.*, 124 App. Div. 438; 196 N. Y. 134; *Appleton* v. *Citizens' Cen. Nat. Bank*, 190 N. Y. 417.) The instrument sued upon is a draft, payable at a stated time exceeding one year from its acceptance for payment, and is prohibited by the Banking Law, and void. (*Pratt* v. *Short*, 79 N. Y. 437; *Nassau Bank* v. *Jones*, 95 N. Y. 115; *Hinneman* v. *Rosenbeck*, 39 N. Y. 98; *Newman* v. *Frost*, 52 N. Y. 422; *Munger* v. *Shannon*, 61 N. Y. 251.)

POUND, J. The instrument sued on reads as follows:
" No.—                    *December 29, 1920.*   $6000.00.
" On December 31, 1921, Pay to the Order of Ourselves, Six thousand 00/000 Dollars.
" The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The acceptor may make this acceptance payable at any bank, banker or trust company in the United States which he may designate.
" To Bank of Washington Heights,
          New York City, N. Y.
" Due Dec. 31, 1921.
                    " ALGIN REALTY CORPORATION,
                              " By ALFRED J. HIGGINS, *Pres.*
                                        " L. S. ROUGH, *Treas.*"

(Indorsed upon the face thereof)
                              " TRADE ACCEPTANCE
                                   " Accepted.
" Date    Dec. 29th — 20.
" Bank    The Bank of Washington Heights of the City of
          New York
                    " Sig. JAMES J. O'SHAUGHNESSY,
                                        " By *Vice Prest.*"

By stipulation of the parties the action was tried without a jury the verdict to be directed to have the same force and effect as if a jury were present.

On October 24, 1919, a lease for twenty-one years covering premises 614-618 West One Hundred and Thirty-first street was executed by Annie T. L. Atterbury as lessor and Alfred J. Higgins as lessee. The lease provided for a graduated rental running from $20,000 to $25,000 per annum. The average yearly rental was $22,500. In the twenty-ninth article of the lease it was provided that the lessee should deposit the sum of $11,250 as security for performance of the covenants of the lease. This stipulation was subsequently modified at the lessee's request to permit him to deposit in lieu of cash " an accepted instrument for the payment of $11,250."

This instrument was a trade acceptance drawn by Alfred J. Higgins on the defendant bank for the sum of $11,250 payable December 31, 1920, to the order of Mrs. Atterbury. It was accepted by the defendant bank under date of October 27, 1919, and was subsequently indorsed by Mrs. Atterbury for collection.

When it was about to fall due Mr. Higgins, who had assigned his lease in the meantime to the Algin Realty Corporation, a company incorporated by him, sought the consent of Mrs. Atterbury to the substitution of $5,250 in cash and a new trade acceptance for $6,000, payable one year from the due date of the old acceptance, that is, December 31, 1921. This arrangement was accepted and the first trade acceptance, drawn by Mr. Higgins personally and accepted by the bank, was surrendered and canceled and, in lieu thereof, there were delivered to Mrs. Atterbury $5,250 in cash and a new trade acceptance for $6,000 drawn by the Algin Realty Corporation and accepted by the defendant bank. The action is prosecuted to compel payment of this acceptance. Defendant contends that as the lease was terminated in December, 1921, by summary proceedings and all pay-

ments then due on the lease were satisfied, the landlord was no longer entitled to hold or enforce the security.

The provisions of the lease which are relevant to this point are as follows:

" *Ninth.* In case of any default in the performance of any of the covenants and agreements herein contained, or in case the lessee abandons the premises or the same shall become vacant, or if the lessee shall become dispossessed or ejected, then the lessor may re-enter and re-occupy the said premises and remove all persons therefrom, and the goods and chattels of said persons without any liability in law or equity for any damage caused by such removal. In case the premises become so vacant *by abandonment during said term, but not by dispossess or ejectment,* then the lessor may re-let the demised premises as the agent of the lessee for the remainder of the term for the account of the said lessee, and the lessee shall remain liable for the rent and to the payments reserved hereunder, less the avails of re-letting, if any there be, and shall pay the same as hereinbefore provided for the payment of rent. If the lessor shall acquire possession of the said premises, or any part thereof, by summary proceedings, or by any other action or judicial proceedings, or in any other lawful manner without judicial proceedings it shall be deemed a re-entry within the meaning of that word as used in this lease."

" *Twenty-ninth.* The said lessee has deposited with the said lessor an accepted instrument for the payment of the sum of Eleven thousand two hundred fifty Dollars, * * * the receipt of which is hereby acknowledged, as security for the payment of rent and the prompt performance of the covenants and conditions of this lease, * * * it being * * * understood and agreed that in the event of the non-payment of rent or default in performance of any of the covenants and conditions herein contained, the said lessor *may apply the amount so deposited to the payment of any rent in default*

*and to the payment of any deficiency in re-letting as here-inbefore mentioned, whether such rent deficiency accrue before or after summary proceedings or other re-entry by the lessor.* \* \* \* "

It is conceded that the premises remained vacant for a year after re-entry. No question arises as to the personal liability of the tenant after re-entry of the premises by summary proceedings. The lessee, by the terms of the ninth paragraph of the lease, ceased thereon to be liable for the rent. Plaintiffs assert their right to resort to the security under the twenty-ninth paragraph. The Appellate Division, recognizing that paragraph 29 of the lease permits the lessor to apply the amount of the deposit to rent deficiency accruing after summary proceedings, seizes on the words " in re-letting *as hereinbefore mentioned* " and concludes that, as there may be no reletting after summary proceedings by the lessor as agent of the lessee, the security is not applicable to the deficiency.

As to what the parties did, or what words they used, no dispute arises. The question is what was the meaning and intention of the parties? The courts will not make an agreement for the parties but will ascertain what their agreement was. Although a written agreement cannot be varied by the circumstances out of which it grew and which attended its adoption, the circumstances may be resorted to for the purpose of ascertaining the standpoint of the parties in regard thereto. (*Reed* v. *Ins. Co.*, 95 U. S. 23.) The evidence throws some light on the seeming inconsistency between the ninth and the twenty-ninth paragraphs. The attorney for Mr. Higgins, the lessee, in connection with the execution of the lease, gives an explanation of the discrepancy between the two clauses of the lease. As first drafted, the lease provided for personal liability. The attorney would not permit Mr. Higgins to consent to a clause which made him liable on a long term lease for the rent after summary proceedings. To this eminently fair and reasonable objection the lessor

yielded. Interpolations were thereupon made in the ninth paragraph limiting the lessee's personal liability to reletting after abandonment only. No question arose as to whether the security should remain liable for the deficiency. The subject was not discussed. It is a familiar rule of the construction of contracts that words are construed most strongly against the person using them. The alterations in paragraph nine are not to be extended and given effect beyond their fair significance.

The lessee does not claim to be the victim of a mistake which might lead to reformation. It stands on the contract as written. The lease stands as the contract of the parties. By a fair and reasonable reading of its terms in the light of the circumstances, it is clear that the intention of the parties as expressed therein was to relieve the lessee of personal liability only and thus to limit his liability to the amount of the security.

The defendant further contends that the trade acceptance is *ultra vires* and unenforc'ble, *first,* because it thereby became a surety on the lease and, *secondly,* because it has accepted a draft for payment at a future date exceeding one year from its date.

The trade acceptance was deposited as security for the lease but the defendant did not deposit it as security and in no sense became a surety on the lease. Its contention that it entered into an *ultra vires* contract of suretyship cannot prevail.

Section 106 of the Banking Law (Cons. Laws, ch. 2), so far as relevant, reads as follows: " In addition to the powers conferred by the general and stock corporation laws, every bank shall, subject to the restrictions and limitations contained in this article, have the following powers: * * * 2. *To accept for payment at a future date, drafts drawn upon it by its customers* and to issue letters of credit authorizing the holders thereof to draw drafts upon it or its correspondents *at sight or on time not exceeding one year.*" The instrument in suit was accepted December 29, 1920, and

was payable December 31, 1921. It is agreed by both parties that it is in the form of a trade acceptance. A trade acceptance is a form of obligation revived in this country in recent years under the regulations of the Federal Reserve Bank Board. (Trade Acceptances, by R. H. Treman, p. 8.) It is defined as a " draft or bill of exchange drawn by the seller on the purchaser of goods sold, and accepted by such purchaser " (Regulations Federal Reserve Board Relating to Acceptances, section A, paragraph V, subd. [a]), while a bankers' acceptance is a draft or bill of exchange of which the acceptor is a bank or banker engaged generally in the business of granting bankers' acceptance credits. (Regulation B, subd. a.) Without deciding whether section 106 prohibits defendant from accepting a draft payable at a future date exceeding one year, we reach the conclusion that its provisions are not applicable where the bank is the purchaser of the goods sold. The transaction at its face value is a purchase on time evidenced by an instrument for the payment of money and is not the establishment of a credit by the acceptance of a draft drawn on the bank by its customers. The trade acceptance recites that " the obligation of the acceptor hereof [the bank] arises out of the purchase of goods from the drawer."

As the trade acceptance was, on its face, a negotiable instrument, a regular and proper obligation of the bank taken from the lessee by the lessor before maturity without notice of any defect, it follows that the enforcement of its obligation cannot be defeated by the claim that as between the bank and the drawer it represented a transaction without consideration or *ultra vires*. (Neg. Inst. Law [Cons. Laws, ch. 38], § 91.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and the Appellate Division.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; LEHMAN, J., not voting.

Judgment accordingly.