NATHAN AUERBACH, Plaintiff, v. MR. & MRS. FOSTER'S PLACE, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, February, 1927.

**Landlord and tenant — lease — action to recover tax payment due under lease — lease provided lessee would be obligated to pay " any taxes and assessments in excess of " tax rate for 1925 — in event amount of additional taxes should exceed $500 in any one year, lessee was obligated only up to said sum yearly — lessee obligated to pay all increases of taxes levied upon real property up to $500 — lessor entitled to judgment on pleadings.**

This is an action by the plaintiff, as lessor, to recover from the defendant, as lessee, a payment claimed to be due under a lease, a clause in which recited that " the lessee agrees to pay any taxes and assessments in excess of the present tax rate for the year 1925, but in the event that the amount of additional taxes shall exceed the sum of $500 in any one year, the lessee shall be obligated only up to the aforementioned sum of $500 yearly." It is undisputed that the taxes for 1926 exceeded those for 1925 by $368.70, but because the first half of the 1926 taxes were due and payable at the time this action was commenced, the lessor seeks to recover only one-half of the increase, viz., $184.35. In the light of the circumstances surrounding the transaction, said lease must be construed as obligating the lessee to pay all increases in taxes levied upon the real property up to a maximum of $500 per year; therefore, the plaintiff is entitled to judgment on the pleadings for the amount stated.

MOTION by defendant for judgment on the pleadings in an action involving the construction of a covenant in a lease providing for the payment of taxes and assessments by the lessee.

*Harry H. Oshrin,* for the plaintiff.

*Sidney W. Davidson,* for the defendant.

Municipal Court of New York, February, 1927.          [Vol. 128

LEARY, J. This is an action by the plaintiff, lessor, against the defendant, lessee, to recover a payment claimed to be due under a lease. Upon the trial no testimony was taken; instead, three motions were made, one by the plaintiff and two by the defendant, and the question of law involved is before the court for decision on the following motions:

(1) A motion by the defendant to dismiss the complaint on the ground that it fails to state facts sufficient to constitute a cause of action.

(2) A motion by the plaintiff to strike out from the amended answer the first and second separate defenses on the ground that they fail to state facts sufficient to constitute a defense.

(3) A motion by the defendant for judgment on the pleadings.

Motion No. 1 is denied and disposed of by the final determination of the motion for judgment on the pleadings.

Motion No. 2 while it would have been granted if made within the time limit prescribed under rule 109 of the Rules of Civil Practice, is denied for the reason that the motion was not made within ten days after the service of the amended answer as prescribed by the aforesaid rule.

The main question is presented under motion No. 3 made by the defendant, for judgment on the pleadings, and involves the construction of one of the covenants of a lease. Upon this construction depends the liability of the defendant for the amount of certain taxes. The covenant in question reads as follows: " The lessee agrees to pay any taxes and assessments in excess of the present tax rate for the year 1925, but in the event that the amount of additional taxes shall exceed the sum of $500 in any one year, the Lessee shall be obligated only up to the aforementioned sum of $500 yearly."

The plaintiff lessor seeks to recover by this action one-half of the difference between the 1925 and 1926 taxes on the premises in question, the first half of the 1926 taxes being due and payable at the time this action was commenced. The undisputed figures are as follows:

| | Assessed valuation | Manhattan tax rate | Amount of tax |
|---|---|---|---|
| 1925 . . . . . . . . . | $82,000 00 | .0269 per $1 00 | $2,205 80 |
| 1926 . . . . . . . . | 95,000 00 | .0271 per $1 00 | 2,574 50 |

Plaintiff's contention is that the defendant is liable for the difference between the 1925 and 1926 taxes which amounts to $368.70 and that the defendant clearly undertook to pay this difference, one-half of which, $184.35, was due at the time this action was commenced.

Defendant's contention is that it is liable only for such part of the 1926 taxes as may be in excess of the tax rate for the year 1925; in other words, the defendant is willing to pay the product of $.0002 times the 1926 assessment of $95,000, which is $19, one-half of which, $9.50, is now due and which amount plus $2.50 as costs, defendant has paid into court.

A lease is in the nature of a contract between the parties thereto.

The first point is, to ascertain what the parties themselves meant and understood. Courts cannot adopt a construction of any legal instrument which will do violence to the rules of language or to the rules of law. Words must not be forced away from their proper signification to one entirely different, although it may be obvious that the words used expressed a very different meaning from that intended. Words will be interpreted with unusual extent of meaning, and held to be generic rather than specific, and thus made to cover things which are collateral rather than identical, if the certain meaning of the parties, and the obvious justice of the case require it.

The question may be whether the words used should be taken in a comprehensive or restricted sense, in a general or a particular sense, in the popular or common, or in some unusual or peculiar sense. In all these cases the court will endeavor to give to the contract a rational and just construction; but the presumption is in favor of the comprehensive over the restricted, the general over the particular, the common over the unusual sense.

" The accurate meaning of the word ' assessment ' doubtless is the determination of the liability of the property to taxation and its valuation for that purpose." (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest,* 169 N. Y. 432, 435.)

In 37 Cyc. 706, the words " tax " and " taxes " have been defined as " a rate or sum of money assessed on the person or property of a citizen by government for the use of the nation or state; burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes." In Bouvier's Law Dictionary (Rawle's 3d Rev. vol. 3, p. 3220) the word " tax " is defined among other things as " a sum or rate imposed by governmental authority for a public object or purpose."

In the same volume (at p. 2807) the word " rate " is defined as " A public valuation or assessment of every man's estate; or the ascertaining how much tax every one shall pay."

Webster's Dictionary gives the meaning of the word " rate " as a " tax or assessment."

From the foregoing definitions, it is clearly seen that the words " tax " and " rate " are used as synonymous terms.

Coming to the construction and interpretation of the covenant in question, the word "tax-rate" as used here merely limits and points out what taxes and assessments the lessee is to pay, for without this word "tax-rate," the covenant would read that the lessee agrees to pay. any taxes and assessments in excess of the year 1925, and by the inclusion of the word "tax-rate," it connotes that the only taxes and assessments that the lessee was to pay were those assessed against the real property.

Indeed, in giving effect to the general meaning of a writing, particular words are sometimes disregarded or supplied. (2 Williston Cont. 1197.)

It is a matter of common knowledge that there are numerous taxes and assessments levied upon real property.

*Ward* v. *Union Trust Co.* (224 N. Y. 73) was an action upon an express covenant contained in a lease, whereby the promise of the lessee was "to pay and discharge all annual taxes as shall during said term be imposed on said premises hereby demised, as soon as they become due and payable." The court (at p. 78) said: "The words 'annual taxes' are used to describe the general taxes in the City of New York as distinguished from special assessments. It is descriptive of the kind of taxes to be paid by the tenant and includes the aggregate or total of taxes for general purposes."

The defendant's amended answer (¶ 9) sets forth that a proposed lease was originally submitted by the plaintiff, prior to the execution of the lease in question, for the approval of the defendant, which contained a corresponding provision, as follows:

"21st. The tenant agrees to pay any water rates, taxes, assessments in excess of the present tax rate for the year 1925, but in the event that the amount thereof exceeds the sum of $500 in any one year the tenant shall remain liable only up to the aforementioned sum of $500 yearly."

This tends to show that there was .a controversy between the parties as to what taxes and assessments were to be paid by the lessee, which finally resulted in the adoption of the covenant in question, providing for the payment by the. defendant of an increase in taxes or assessments levied upon the real property only, up to a certain amount.

As was said by the learned Judge POUND in *Atterbury* v. *Bank of Washington Heights* (241 N. Y. 231, 237): "As to what the parties did, or what words they used, no dispute arises. The question is what was the meaning and intention of the parties? The courts will not make an agreement for the parties but will ascertain what their agreement was. Although a written agreement cannot be

varied by the circumstances out of which it grew and which attended its adoption, the circumstances may be resorted to for the purpose of ascertaining the standpoint of the parties in regard thereto. (*Reed* v. *Ins. Co.*, 95 U. S. 23.) "

" The contract must be construed in accordance with the natural meaning of the words employed." (Points of counsel, *Gillet* v. *Bank of America*, 160 N. Y. 549, 551.)

In *Brainard* v. *N. Y. C. R. R. Co.* (242 N. Y. 125) the question was as to the construction of a covenant in a lease and a working agreement to pay taxes. The court said (at p. 131): " The words chosen by the parties should not be unnaturally forced beyond their ordinary meaning. (*Codman* v. *American Piano Co.*, 229 Mass. 285.) "

" Where a word has a broad and also a restricted meaning, both of which are consistent with approved usage, the question of which meaning is intended in a particular case must be determined from the context." (13 C. J. 532.)

So far as it affects the question here we must determine the meaning of the words used in the covenant, and in so doing the law says greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. (13 C. J. 523.)

To this paramount rule all others are subordinate. (6 R. C. L. 835.)

Construing and interpreting the proviso contained in the special covenant in question, it appears (*a fortiori*) that the interpretation sought for by the plaintiff is correct. The proviso is as follows: " but in the event that the amount of additional taxes shall exceed the sum of $500 in any one year, the Lessee shall be obligated only up to the aforementioned sum of $500 yearly."

This proviso speaks only of " additional taxes " and not of a " tax rate." What is meant by " additional taxes? "

Webster's Dictionary defines the word " additional " as " an increase " and as stated above the word " tax " is " A sum or rate imposed by governmental authority for a public object or purpose." Taking the two together they mean an increased sum or amount of money. The very fact that the parties fixed in this provision a maximum amount for which the lessee shall be liable in case of additional taxes proves most cogently that the intention of the contracting parties was that the lessee should pay all increases of taxes levied upon the real property up to a maximum amount of $500 per year, and not an increased rate of the percentage of levy as contended by the defendant.

The intention of the parties is found in the language used to express such intention. (*Hartigan* v. *Casualty Co.*, 227 N. Y. 175.)

If further evidence be necessary of what the parties intended by their covenant, it may be found by a consideration of the tax situation in the borough of Manhattan (where the premises are situated) during the five years immediately prior to the making of the lease.

The lease was executed on the 16th day of November, 1925. The percentage of tax levy for $100 in the borough of Manhattan for each of the five years ending with 1925 was as follows: 1921, 2.77; 1922, 2.75; 1923, 2.74; 1924, 2.74; 1925, 2.69.

On the other hand, the assessed valuation in the borough of Manhattan during the same period of time was as follows: 1921, $5,878,847,633; 1922, $6,058,643,144; 1923, $6,177,890,668; 1924, $6,402,525,800; 1925, $6,721,085,292.

The foregoing figures are set forth in the World Almanac for 1926 (pp. 509, 510) and of which the court may take judicial notice. (Richardson Outline on Evidence, 13; *Montenes* v. *Metropolitan Street Railway Co.*, 77 App. Div. 493.)

In other words, when the parties entered into this lease, for the preceding five years the percentage of rate of tax levy was decreasing, while during the same period of time the assessed valuation was increasing.

In *Gillet* v. *Bank of America* (*supra*, 555), cited with approval in *Nellis* v. *Western Life Indemnity Co.* (207 N. Y. 320, 335), the court said: " In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed. Indeed, the great object, and practically the only foundation of rules for the construction of contracts is to arrive at the intention of the parties. This is a most conspicuous and far-reaching rule, and involves the nature of the instrument, the condition of the parties and the objects which they had in view, and when the intent is thus ascertained, it is to be effectuated unless forbidden by law."

" It has been held in many cases that the court will so construe a lease as to carry out the intention of the parties if possible." (*Buchanan* v. *Whitman*, 151 N. Y. 253.)

It is obvious from the language of the covenant, when read in the light of the circumstances and facts surrounding the transaction and when the principles of construction already stated are applied, that the contention of the plaintiff is correct.

The motion for judgment on the pleadings made by the defendant herein is hereby denied and judgment on the pleadings granted to the plaintiff. (Rules of Civil Practice, rule 112.)