KAREKIN M. YAZUJIAN, Plaintiff, *v.* J. RICH STEERS, INC., et al., Defendants.

Supreme Court, Trial Term, New York County, May 9, 1949.

*Morton Singer* and *Edward Holloway, Jr.,* for plaintiff.

*John F. X. McGohey, United States Attorney* for the Southern District of New York (*Louis Mansdorf* of counsel), for defendants.

GREENBERG, J.  The plaintiff sues for damages for breach of an agreement of employment.  The agreement, signed in December, 1947, provided for the employment of plaintiff as project engineer in Greece.  His employment was to be in connection with rehabilitation work being carried on by defendants, as contractors, under a prime contract between defendants and the United States Government.  Prior to the signing of the employment contract, the plaintiff was given a complete physical examination by a United States Government physician and was found to be in good physical condition.

The plaintiff subsequently traveled to Greece, arriving there on December 20, 1947.  On Monday, December 22d, plaintiff reported to defendants' office for instruction and was given an orientation lecture with other new employees.  He was thereafter called aside by one of defendants' agents and told he was fired, that he was too old and could not endure the hardships of the job.  The following day he was examined by a doctor who reported that he did not believe plaintiff was physically fit to do work involving strenuous exercise or dexterity of the hands.  Plaintiff was sent back to the United States, arriving here December 28th.  On December 30th he was again examined at an army dispensary and found to be physically qualified for the employment intended.

The plaintiff contends that his employment under the contract was for a period of twelve months and that his discharge without cause before he even entered upon his duties was a breach of the agreement. Defendants, on the other hand, contend that the employment agreement was one at will and, further, that the plaintiff is barred from suing by reason of his failure to comply with the contract provisions as to the giving of notice of claim and commencement of suit.

The agreement of employment is a printed form which in fine print covers both sides of a long sheet of paper. It was obviously prepared by defendants, and any ambiguity must, under well-settled principles, be construed most favorably to the plaintiff (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187).

Section 2 of the contract provides: " The term of this agreement shall be the period during which the Contractor desires the services of the Employee in connection with the construction contracts. No definite period of employment is assured; however, after twelve (12) months continuous employment from the date of this agreement, the Employee may terminate his employment hereunder by giving the Contractor written notice specifying the date on which he desires to terminate his employment, which date shall not be less than fifteen (15) days after the date of delivery of notice to the Contractor."

Section 5(c) (2) provides that "If the Employee quits or this agreement is terminated by the Contractor for cause as defined in Section 11 hereof, the Employee shall forfeit any leave which may have accrued at the time of separation."

Section 10 deals with the creation of a return transportation fund and provides for differing procedures depending upon whether the employee completes twelve months of service, or quits or is discharged for cause prior thereto. It also makes provision for the payment of the fund to the employee in the event the agreement is terminated by defendants prior to twelve months of service for reasons other than those set forth in section 11. Section 11 sets forth grounds for a discharge for cause, and also provides for the cessation of defendants' obligations in the event the employee quits prior to the completion of twelve months' service or is discharged for cause.

Construing these provisions together, as they must be construed (*Fleischman* v. *Furgueson*, 223 N. Y. 235, 239; *Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519, 524; *Wolkind* v. *Berman*, 232 App. Div. 47, 50), it is my conclusion that the parties intended an employment of plaintiff for a term of twelve months. The parties contemplated that the employment might end before

that period if the entire project was abandoned or the type of services for which plaintiff was employed proved not to be necessary or desirable. The parties also agreed that the plaintiff might, before the end of such period, be discharged for cause. The hiring for twelve months was subject only to these eventualities, and gave to the defendants no right to discharge plaintiff as they saw fit.

The provisions in section 2 that ''The term of this agreement shall be the period during which the Contractor desires the services of the Employee in connection with the construction contracts. No definite period of employment is assured '' were intended to cover the contingencies that the entire program might end before the twelve months' period expired or that the kind of services for the performance of which the employee was engaged might not be required at some time before the expiration of such period. This was confirmed by defendants' witness Olsen who testified that the agreement was made in connection with a prime contract between defendants and the United States Government for rehabilitation work in Greece; that the prime contract was of indefinite duration because conditions in Greece and the world at large might cause an abandonment of the construction project by the Government. He testified that this possibility of termination of the prime contract was the reason for section 2. The provision in section 10 regarding termination prior to the twelve-month period for causes other than those set forth in section 11 is supplementary of section 2, and likewise refers to the situation which might justify termination under section 2.

That plaintiff was not discharged for cause within the meaning of section 11 is clear. Most of the grounds for dismissal there set forth relate in one way or another to the employee's misconduct. There is also provision made for circumstances over which defendants might have no control, as a request by the contracting officer that the employee be discharged. The provision in section 11 for discharge for lack of ability to perform the work of the classification for which the employee was hired refers to his qualifications for the job, and relates to section 1 in which the employee represents that he is fully qualified for such class of work. A contention that a discharge because plaintiff was found to be physically unfit comes within section 11 cannot be maintained, particularly in view of the penalties imposed upon an employee discharged for cause under section 11 and section 5(c) (2). If physical unfitness was a ground of dismissal for cause, it is difficult to see why there should be any occasion for

forfeiture on the employee's part as provided in cases of discharge for cause. Physical incapacity arising in the course of employment is dealt with in other specific parts of the contract and is not involved in this case.

Section 12 also makes clear that defendants had no right to discharge plaintiff for physical unfitness. That section provides that the furnishing by the employee of certificates of his physical condition prior to departure from the point of hire is a condition precedent to the employment. The employee did comply with that condition and submitted the report of a medical examination made by an officer of the United States army prior to the execution of the contract. There is no question regarding the accuracy of this report, which set forth plaintiff's age, and there is no claim that plaintiff ever misrepresented his age or physical condition. If the plaintiff was physically unfit or too old for the job, defendants should have refused to employ him. If there was any question regarding his fitness, defendants should at that time have secured further information. Having entered into the contract with knowledge of plaintiff's age and physical condition, and having caused him to travel from the United States to Greece to fulfill his obligations under the contract, defendants could not thereafter change their minds and try to relieve themselves of their obligations by an attempted discharge.

In fact, the evidence in this case does not establish that plaintiff was physically unfit for the employment for which he was engaged. He was found physically qualified for the job both before he left the United States and after he returned. He was in fact discharged in Greece before his physical examination took place there. The defendants were unable to explain how the physician who examined the plaintiff in Greece came to a conclusion so radically different from that reached by the physicians who examined the plaintiff in this country before the contract was signed and after the plaintiff returned to this country. That the defendants did not act in good faith is amply demonstrated not only by the evidence, but by the inherent probabilities in the case.

Any apparent ambiguity with regard to the term of employment, therefore, can be resolved when the surrounding circumstances are considered, and the court may, of course, consider such circumstances in ascertaining the intention of the parties (*Becker* v. *Frasse & Co.*, 255 N. Y. 10, 14; *Atterbury* v. *Bank of Washington Heights*, 241 N. Y. 231, 237; *Gressing* v. *Musical Instrument Sales Co.*, 222 N. Y. 215, 219).

If these clauses are construed as giving the defendants the arbitrary right to discharge plaintiff, at their mere whim at any time, i.e., to disregard and/or to destroy the agreement immediately after it was signed, then the whole agreement is a fraud or an illusion. There is no question that the plaintiff bound himself to serve for a minimum of twelve months. Defendants apparently were unwilling to transport him to Greece without that assurance. Of course, plaintiff could quit before that time, but not without suffering the penalties that the contract and the law might impose. But the defendants claim that they could with impunity dismiss the plaintiff any time they chose for any reason or no reason. The assurance of tenure that the defendants required of plaintiff is claimed not to have been granted him by defendants. It must be clear language that will impose any such one-sided obligation.

In interpreting contracts, courts will adopt a fair and equitable construction imposing mutuality of obligation in preference to an obligation that is unilateral (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187, 197–198; *Wigand* v. *Bachmann-Bechtel Brewing Co.*, 222 N. Y. 272, 277; *Fleischman* v. *Furgueson*, 223 N. Y. 235, 241, *supra; Sanford* v. *Brown Bros. Co.*, 208 N. Y. 90, 96). " There may ", as Judge CARDOZO stated in the *Moran* case (*supra,* p. 197), " be a ' promise ' to serve without a promise to employ, but there can be no ' agreement ' for service without mutuality of rights and duties." He also said in that case (pp. 195–196): " The trial judge held that the contract imposed no obligation on the defendant to employ the plaintiff for five years, and that at the defendant's option it was terminable at will. We cannot accept that construction of its meaning. An intention to make so one-sided an agreement is not to be readily inferred. (*Sanford* v. *Brown Brothers Co.*, 208 N. Y. 90.) The contract was drawn by the defendant's lawyers and was tendered to the plaintiff with the assurance, as he says, that his future for the next five years would be secure. Since the language is the defendant's we must construe it, if its meaning is doubtful, most favorably to the plaintiff. (*Gillet* v. *Bank of America,* 160 N. Y. 549, 555; *Marshall* v. *Com'l Tr. Mut. Acc. Assn.,* 170 N. Y. 434.) We must also give its words the meaning which the defendant ought reasonably to have understood that the plaintiff would put upon them. (*White* v. *Hoyt,* 73 N. Y. 505, 511; *Nellis* v. *Western Life Indemnity Co.,* 207 N. Y. 320, 332, 334.) When these canons of construction are remembered and applied, we must conclude that the plaintiff believed and had the right to believe that the period of five years was to be the term of employment as well as the

term of service.'' (See, also, *Vogel* v. *Pathe Exchange,* 234 App. Div. 313, 318.)

This interpretation of the contract is borne out by the actions of the defendants. Although the evidence shows that there was no valid basis for a dismissal for '' cause '', the defendants in dismissing plaintiff attempted to clothe this dismissal with reasons falling within the definitions of '' cause '' under section 11. They advised plaintiff he was unable to perform the work for which he had been hired. If the defendants construed the contract as giving them the right to discharge the plaintiff at will, it would have been unnecessary to set forth as the ground for dismissal a reason included within the definition of '' cause '' under section 11. They could have relied on what they now claim was their right to discharge the plaintiff without cause or at will. The courts have repeatedly held that the acts of the parties may provide a practical interpretation of the terms of a contract (*Schoellkopf* v. *Coatsworth,* 166 N. Y. 77, 84; *Vogel* v. *Pathe Exchange, supra,* p. 318).

If this contract meant what defendants now claim it means, it was their duty to express that meaning in unmistakable language. The contract was not designed for signature by persons skilled in the law. If defendants wished to have the right to fire at will they could have stated, in type at least as large as that in which they set forth the employee's representation that '' he fully understands its terms and conditions '', somewhat as follows: '' The Employee agrees that he may be fired from his job at any time for any reason or no reason.'' It is doubtful that applicants for jobs would flock to defendants' offices were their intention in this regard so plainly stated.

Defendants also assert that plaintiff failed to comply with the conditions of the contract that he would file written notice of claim with defendants within thirty days after the claim arose, that he would not institute suit against defendants thereon prior to six months after the filing of notice nor later than two years thereafter. The two-year provision has obviously been satisfied.

Plaintiff was discharged on December 22, 1947. He returned to the United States on December 28th. He gave defendants oral notice of his claim within the thirty-day period and gave written notice of his claim on February 11, 1948. His claim was rejected by defendants on March 24, 1948, solely on the ground that under the contract they had the right to discharge plaintiff at will. No mention was made of any failure to file written notice of claim within the thirty-day period. Plaintiff commenced this suit on May 6, 1948.

The provision for written notice of claim was obviously intended to insure that defendants would be informed of the claim before it became stale in order that they might pass upon its merits while the facts were still fresh. The defendants were promptly informed of the claim within the thirty-day period and made prompt inquiry regarding it. They were in no way misled or prejudiced. Indeed, by passing on the written notice of claim upon its merits without any objection to its having been filed on February 11th, defendants treated the claim as valid. They thereby waived any objection with regard to its late filing (*Isham* v. *Erie R. R. Co.*, 112 App. Div. 612, affd. 191 N. Y. 547; *Cheney Piano Action Co.* v. *New York Central & Hudson Riv. R. R. Co.*, 166 App. Div. 706, affd. 222 N. Y. 557; see *Littlejohn* v. *Shaw*, 159 N. Y. 188, 191).

The provision that the plaintiff would not institute suit prior to six months after the filing of the notice was designed to give defendants opportunity to investigate and to decide upon their course of action. They did decide upon their course of action and formally rejected the claim on March 24th. There was no reason for plaintiff thereafter waiting to institute suit, and he was not bound to do so. (*Callahan* v. *London & Lancashire Fire Ins. Co.*, 98 Misc. 589, affd. 179 App. Div. 890; *Edwards* v. *Firemen's Ins. Co.*, 43 Misc. 354; *Reese* v. *Fidelity & Deposit Co.*, 93 Misc. 31).

Defendants are therefore liable in damages to plaintiff for the amount that he would have earned under the contract during the minimum period of twelve months (*Hollwedel* v. *Duffy-Mott Co.*, 263 N. Y. 95, 101). Accordingly, judgment is directed in favor of plaintiff and against the defendants in the sum of $8,500, together with interest and costs. Exception to the defendants.